NO. 12-7133

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

### For The District of Columbia Circuit

## UNITED STATES OF AMERICA,
## EX REL. STEPHEN M. SHEA,

*Plaintiff – Appellant,*

**v.**

## CELLCO PARTNERSHIP, doing business as Verizon Wireless; VERIZON BUSINESS NETWORK SERVICES, INC.; VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES, INC., doing business as Verizon Business Services,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————

## BRIEF OF APPELLANT

———————

**Mark London**
**Christopher Mead**
LONDON AND MEAD
**1225 19th Street, NW, Suite 320**
**Washington, DC 20036**
**(202) 331-3334**

*Counsel for Appellant*

**THE LEX GROUP**DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.  PARTIES

>  A.  DISTRICT COURT PARTIES

> The following parties appeared before the district court:

> 1.  Relator Stephen M. Shea.

> 2.  The United States (which did not intervene).

> 3.  Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services Inc., Verizon Federal Inc., and MCI Communications Services, Inc. d/b/a Verizon Business Services (collectively referred to as "Verizon").

>  **B.  Parties Before This Court**

> 1.  Appellant is Relator Stephen M. Shea.

> 2.  The United States (which did not intervene).

> 3.  Appellees are Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services Inc., Verizon Federal Inc., and MCI Communications Services, Inc. d/b/a Verizon Business Services.

### II.  RULINGS UNDER REVIEW

> The following rulings are under review on appeal:

> 1.  On November 15, 2012, United States District Judge Gladys Kessler

granted Defendants' Motion to Dismiss [Dkt. No. 57, J.A. 303-322]. *See United States ex rel. Shea v. Verizon Business Network Servs.*, 904 F. Supp. 2d 28 (D.D.C. 2012).

2.      On December 27, 2012, Judge Kessler denied Relator's Motion to Clarify, or, in the Alternative, to Alter or Amend The Court's Order of November 15, 2012 [Dkt. No. 67, JA 323] and, on the same day, entered a separate judgment dismissing Relator's Second Amended Complaint with prejudice [Dkt. No. 68, JA 324].

## III.   RELATED CASES

This case has not previously been before this Court.  Undersigned counsel is not aware of any related case currently pending before any court.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF CONTENTS ........................................................... iii

TABLE OF AUTHORITIES .......................................................v

JURISDICTIONAL STATEMENT ...........................................1

STATEMENT OF ISSUES ......................................................2

STATUTE AT ISSUE ..............................................................3

STATEMENT OF FACTS ........................................................3

      Verizon I ............................................................................4

      Verizon II ...........................................................................5

SUMMARY OF THE ARGUMENT ......................................6

STANDARD OF REVIEW ......................................................8

ARGUMENT ..........................................................................9

    I.    THE DISTRICT COURT ERRED IN DISMISSING *VERIZON II* WITH PREJUDICE – EARLIER FILED QUI TAM ACTIONS DO NOT REMAIN "CONSTRUCTIVELY" PENDING IN PERPETUITY ..............................................9

    II.   THE FIRST-TO-FILE RULE DOES NOT APPLY BECAUSE *VERIZON I* WAS NOT "PENDING" WHEN THE SECOND AMENDED COMPLAINT WAS FILED ..........................................12

III.    VERIZON I DOES NOT BAR VERIZON II UNDER THE
        FIRST-TO-FILE RULE BECAUSE SHEA FILED BOTH
        ACTIONS ..........................................................................................17

        A.    THE DISTRICT COURT'S PLAIN LANGUAGE ANALYSIS
              IGNORED THE "INTERVENE" PRONG OF THE STATUTE ..............17

        B.    THE LEGISLATIVE HISTORY INDICATES THAT CONGRESS
              INTENDED 3730(B)(5) TO PREVENT MULTIPARTY
              SCRUMS, NOT SUCCESSIVE SUITS BROUGHT BY THE SAME
              RELATOR ...................................................................................19

        C.    THE DISTRICT COURT'S DECISION CONFLICTS WITH THE
              FIFTH CIRCUIT AND TENTH CIRCUITS ........................................19

        D.    THE DISTRICT COURT'S INTERPRETATION DOES NOT
              FURTHER THE FCA'S GOALS ......................................................22

IV.     VERIZON I AND VERIZON II ARE UNRELATED BECAUSE
        VERIZON II ALLEGES THAT VERIZON COMMITTED
        FRAUD ON CONTRACTS AND AGENCIES NOT AT
        ISSUE IN VERIZON I ........................................................................24

        A.    THE TENTH CIRCUIT CORRECTLY CONCLUDED THAT
              COURTS SHOULD NOT APPLY A NOTICE-BASED
              STANDARD TO THE FIRST-TO-FILE BAR ......................................30

        B.    APPLYING A NOTICE-BASED STANDARD TO THE FIRST-
              TO-FILE BAR WOULD PREVENT VALUABLE QUI TAM
              LAWSUITS ..................................................................................32

        C.    EVEN IF THIS COURT CONCLUDES THAT A NOTICE-BASED
              STANDARD SHOULD APPLY, THE COURT BELOW, SYNNEX,
              AND CDW STILL WENT TOO FAR ...............................................32

CONCLUSION ........................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bailey v. Shell W. E&P Inc.*,
  609 F.3d 710 (5th Cir. 2010) ...................................8, 17, 20, 21, 22

*Campbell v. Redding Med. Ctr.*,
  421 F.3d 817 (9th Cir. 2005) .........................................................23

*Commercial Union Ins. Co. v. United States*,
  999 F.2d 581 (D.C. Cir. 1993).......................................................15

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
  541 U.S. 246 (2004).........................................................................9

*Goble v. Marsh*,
  684 F.2d 12 (D.C. Cir. 1982).........................................................15

*Green v. Bock Laundry Machine Co.*,
  490 U.S. 504 (1989).......................................................................17

*Grupo Dataflux v. Atlas Global Group, L.P.*,
  541 U.S. 567 (2004).......................................................................14

*Grynberg v. Koch Gateway Pipeline Co.*,
  390 F.3d, 1276 (10th Cir. 2004) ...................................................22

*IBP, Inc. v. Alvarez*,
  546 U.S. 21 (2005).........................................................................18

*In re Natural Gas Royalties ex rel. United States v. Exxon Co., USA*,
  566 F.3d 956 (10th Cir. 2009) ......................................7, 11, 13, 14,
                                                         23, 29, 30, 31, 34

*Mathews v. Diaz*,
  426 U.S. 67 (1976).........................................................................15

*Chief Authorities are Designated with an Asterisk

*Netcoalition & Secs. Indus. & Fin. Mkts. Ass'n v. SEC*,
  715 F.3d 342 (D.C. Cir. 2013)............................................................9

*Public Citizen v. United States Dep't of Justice*,
  491 U.S. 440 (1989)....................................................................17

*\*United States ex rel. Batiste v. SLM Corp.*,
  659 F.3d 1204 (D.C. Cir. 2011)....................................... 7, 8, 11, 12, 13, 14,
                                                                                  25, 26, 28, 29, 32

*\*United States v. Alpharma, Inc.*,
  2013 U.S. Dist. LEXIS 29802 (D. Md. Mar. 5, 2013) ....................11, 13, 14

*United States v. Kinder Morgan Co2 Co., L.P.*,
  2005 U.S. Dist. LEXIS 31103 (D. Colo. Nov. 21, 2005).......................20, 22

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
  2013 U.S. Dist. LEXIS 39620 (E.D. Va. Mar. 21, 2013)...........................11

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*,
  560 F.3d 371 (5th Cir. 2009) ...................................................... 20, 21-22, 29,
                                                                                  30, 33

*United States ex rel. Branch Consultants, L.L.C., v. Allstate Ins. Co.*,
  782 F. Supp. 2d 248 (E.D. La. 2011) ...................................................13, 14

*\*United States ex rel. Carter v. Halliburton Co.*,
  710 F.3d 171 (4th Cir. 2013) ..................................................................7, 10

*\*United States ex rel. Chovanec v. Apria Healthcare Group Inc.*,
  606 F.3d 361 (7th Cir. 2010) ..................................................7, 10, 11, 12, 14

*United States ex rel. Denenea v. Allstate Ins. Co.*,
  2011 U.S. Dist. LEXIS 6419 (E.D. La. Jan. 24, 2011) ................................13

*United States ex rel. Folliard v. CDW Tech. Servs.*,
  722 F. Supp. 2d 37 (D.D.C. 2010)...............................................27, 28, 29, 32

*United States ex rel. Folliard v. Synnex Corp.*,
  798 F. Supp. 2d 66 (D.D.C. 2011)...............................................27, 28, 29, 32

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
　　318 F.3d 214 (D.C. Cir. 2003)................................................................25, 30

*United States ex rel. Hoggett v. Univ of Phoenix*,
　　2012 U.S. Dist. LEXIS 93812 (E.D. Cal. July 5, 2012)...............................11

*United States ex rel. LaCorte v. Wagner*,
　　185 F.3d 188 (4th Cir. 1999) ........................................................................18

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
　　243 F.3d 1181 (9th Cir. Cal. 2001) ..............................................................21

*\*United States ex rel. Ortega v. Columbia Healthcare*,
　　240 F. Supp. 2d 8 (D.D.C. 2003)..........................................16, 21, 22, 23, 25

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*,
　　474 F. Supp. 2d 75 (D.D.C. 2007)................................................................32

*United States ex rel. Smith v. Yale-New Haven Hospital, Inc.*,
　　411 F. Supp. 2d 64 (D. Conn. 2005) ............................................................18

## STATUTES

28 U.S.C. § 1291 .....................................................................................................2

28 U.S.C. § 1331 .....................................................................................................1

28 U.S.C. § 1345 .....................................................................................................1

28 U.S.C. § 1653 ...............................................................................................14, 15

31 U.S.C. § 3729(a)(1)(A) ......................................................................................1

31 U.S.C. § 3729(a)(1)(B) ......................................................................................1

31 U.S.C. § 3730(b) ..............................................................................................21

31 U.S.C. § 3730(b)(5)........................................................... 1, 3, 7, 8, 10, 11, 16,
　　　　　　　　　　　　　　　　　　　　　　　17, 19, 21, 24, 31, 34

31 U.S.C. § 3732(a) ...................................................................................1

42 U.S.C. § 405(g) .................................................................................15

**RULES**

Fed. R. App. P. 4(a)(4) ...........................................................................1

Fed. R. Civ. P. 15 ..................................................................................16

**OTHER AUTHORITIES**

Black's Law Dictionary (5th ed. 1979) ..................................................10

Black's Law Dictionary (9th ed. 2009) ..................................................10

S. Rep. No. 99-345 (1986), reprinted in 1986 U.S.C.C.A.N. 5266 ........................19

# JURISDICTIONAL STATEMENT

The parties disagree about whether the district court had jurisdiction. Relator Shea's Second Amended Complaint alleged that Verizon violated the False Claims Act ("FCA") (31 U.S.C. 3729(a)(1)(A) and (B)), and the district court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 31 U.S.C. § 3732(a). Verizon moved to dismiss, arguing in part that the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), stripped the district court of subject matter jurisdiction because Shea had filed an earlier *qui tam* action against Verizon ("*Verizon I*").[1] The district court agreed and dismissed the Second Amended Complaint under 31 U.S.C. § 3730(b)(5) on November 15, 2012.

On November 26, 2012, Shea timely filed a Motion to Clarify, or, in the Alternative, to Alter or Amend the Court's Order of November 15, 2012. Out of caution, Shea also timely filed a Notice of Appeal on December 17, 2012.[2] On December 27, 2012, the district court denied Shea's Motion to Clarify and entered Judgment dismissing the Second Amended Complaint with prejudice. On January

---

[1] *Verizon I* refers to Civ. Action No. 07CV0111(GK) that Shea filed in the United States District Court for the District of Columbia, discussed below. *Verizon II* refers to this action.

[2] Undersigned counsel was concerned that if the district court treated Shea's motion solely as a motion to clarify and entered a dismissal without prejudice, the motion arguably would not fit one of the enumerated categories in F.R.A.P.4(a)(4).

11, 2013, Shea filed an Amended Notice of Appeal to include the district court's December 27, 2012 Order.

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      The district court dismissed *Verizon II* in 2012 with prejudice even though *Verizon I* was no longer pending because it settled and was dismissed with prejudice in 2011. Did the district court ignore the ordinary meaning of "pending" by finding that *Verizon I* remained constructively "pending" under the first-to-file rule and thus barred all subsequent related suits in perpetuity?

2.      Relator Shea filed his Second Amended Complaint in *Verizon II* after *Verizon I* settled and was dismissed with prejudice. The district court held that subject matter jurisdiction under the first-to-file bar should be determined by considering only the jurisdictional facts that existed when Shea filed his original complaint in *Verizon II*. Did the district court err in holding that amended complaints are irrelevant to determining jurisdiction under the first-to-file bar?

3.      Relator Shea filed both *Verizon I* and *Verizon II*. Did the district court err by finding that the first-to-file bar applied to the same relator who, upon additional investigation, later filed a second allegedly related action?

4.      *Verizon II* alleged that Verizon committed fraud on contracts and agencies not at issue in *Verizon I. Verizon II* would thus result in different

- 2 -

investigations and recoveries for the United States. Did the district court err by

finding that *Verizon I* and *Verizon II* were "related" under the first-to-file bar?

## STATUTE AT ISSUE

The district court dismissed solely on the FCA's first-to-file bar, [31 U.S.C.](#)

[§ 3730(b)(5)](#), which provides: "[w]hen a person brings an action under this

subsection, no person other than the Government may intervene or bring a related

action based on the facts underlying the pending action."

## STATEMENT OF FACTS

Relator Stephen M. Shea is a telecommunications consultant and the former

managing director of TechCaliber LLC. Shea specializes in negotiating and

managing telecommunication contracts for large commercial clients. TechCaliber's

client list includes many Fortune 100 companies. Before founding TechCaliber,

Shea was a Senior Manager in Deloitte Consulting's networking practice. Shea has

expertise in competitive analysis of tariffed and negotiated phone rates. Shea holds

a BS in Engineering Management from the United States Military Academy and an

MBA from Columbia University.[3]

During his consulting work, Shea learned that most telecommunication

carriers were overcharging even large commercial customers with a multitude of

poorly understood fees, surcharges, and taxes. Carriers then used misleading

---

[3] JA 53.

language to conceal these overcharges from their commercial customers. Shea also learned that surcharges passed on to the carriers' customers frequently had no correlation with the taxes and surcharges actually levied on the carriers. Shea found that sophisticated commercial customers did not realize they were being overbilled. Shea recovered over $50 million for commercial customers due to his expertise in identifying overcharging.[4]

## *Verizon I*

In 2007, Shea filed Civ. Action No. 07CV0111(GK), in the United States District Court for the District of Columbia ("*Verizon I*").[5] In that action, Shea alleged that Worldcom, later named MCI Communications Corp., and acquired by Verizon in 2006 (collectively "Verizon/MCI"), knowingly submitted false and fraudulent claims to the United States under its FTS2001 and the FTS2001 Bridge Contract with the General Services Administration by charging Federal Regulatory Fee surcharges, state sales, excise and utility taxes; and surcharges based on the following state and local fees: contributions and taxes assessed on the earner, public utility commission fees, state universal service fund and high cost fund contributions; state 'deaf taxes;' state and local gross receipts taxes; business

---

[4] JA 54.
[5] JA 138-157.

license fees; 911 taxes; tele-relay service charges; ad valorem taxes; and business, occupational and franchise taxes.[6]

*Verizon I* was limited to the FTS2001 Contract and the FTS2001 Bridge Contract with GSA.[7] *Verizon I* did not allege a corporate-wide Verizon/MCI fraud on every telecommunications contract with the United States. GSA was the only U.S. agency at issue in *Verizon I*. And *Verizon I* specifically *excluded* the Federal Universal Service Charge from its list of illegal surcharges. *See* Complaint, ¶ 66 ("The Federal Universal Service Fund surcharge, the PICC surcharge, and certain other taxes were acceptable line item charges under the FTS 2001 Contract.") (JA 151).

Verizon paid the United States $93.5 million to settle *Verizon I*, without admitting liability.[8] The *Verizon I* Settlement Agreement released Verizon only from conduct relating to the FTS2001 and FTS2001 Bridge Contracts.[9] *Verizon I* was dismissed with prejudice on February 28, 2011.[10]

### *Verizon II*

Upon further investigation, Shea gathered information that Verizon/MCI was engaging in similar conduct on other telecommunications contracts with the

---

[6] JA 153-155.
[7] JA 145-151 (Complaint, ¶¶ 28-64).
[8] JA 306.
[9] JA 260-261.
[10] JA 306.

- 5 -

United States. Shea then filed a second *qui tam* action on June 5, 2009.[11] On

November 30, 2011, the United States informed the district court that it was "not

intervening at this time" in *Verizon II*.[12] On September 12, 2012, Shea filed his

Second Amended Complaint.[13]

   The Second Amended Complaint in *Verizon II* alleges that Verizon

committed fraud on 20 contracts not at issue in *Verizon I*.[14] While some of these

contracts were with GSA, other contracts were with agencies not at issue in

*Verizon I*: the United States Postal Service, Department of Defense, Federal

Emergency Management Agency, Department of Justice, Department of Navy, and

the Federal Aviation Administration.[15] The Second Amended Complaint

repeatedly alleges that Verizon improperly charged the Federal Universal Service

Charge, a surcharge not at issue in *Verizon I*.[16]

## SUMMARY OF THE ARGUMENT

   The district court dismissed *Verizon II* with prejudice under the first-to-file

bar even though *Verizon I* was no longer pending at the time of dismissal. Even

assuming that the first-to-file bar applies, this was clear error. Every circuit to

consider the issue has recognized that once a prior action has been dismissed or

---

[11] JA 12-31.
[12] JA 34-35.
[13] JA 52-71.
[14] JA 59-61 (SAC, ¶ 28).
[15] JA 59-61 (SAC, ¶ 28).
[16] JA 61-66 (SAC, ¶¶ 30-41).

resolved, that action is no longer "pending" and does not bar later-filed suits.[17]
This Court has suggested it would interpret "pending" the same way.[18]
Consequently, Shea should have been allowed to file a new complaint the day after
dismissal.

     The district court committed further error by dismissing the Second
Amended Complaint under 31 U.S.C. § 3730(b)(5). The first-to-file rule does not
bar the Second Amended Complaint for three independent reasons:

    (1) When Shea filed his Second Amended Complaint, *Verizon I* had settled
       and been dismissed. Even if *Verizon I* would have barred the original
       complaint in *Verizon II*, jurisdiction was restored under the first-to-file
       bar when Shea filed his Second Amended Complaint.

    (2) Shea filed both *qui tam* actions at issue. Under the first-to-file bar,
       *Verizon I* only barred someone other than Shea from filing a related
       action. The district court's holding – that the first-to-file rule applies to

---

[17] *See United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir.
2013) (reversing the district court's dismissal with prejudice because the earlier
filed action was no longer pending); *United States ex rel. Chovanec v. Apria
Healthcare Group Inc.*, 606 F.3d 361, 365 (7th Cir. 2010) (same); *In re Natural
Gas Royalties ex rel. United States v. Exxon Co., USA*, 566 F.3d 956, 964 (10th
Cir. 2009) ("And yet, if that prior claim is no longer pending, the first-to-file bar
no longer applies.").

[18] *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011)
("[t]he statutory text imposes a bar on complaints related to earlier-filed, 'pending'
actions. The command is simple: **as long as a first-filed complaint remains
pending**, no related complaint may be filed.") (emphasis added).

subsequent related actions filed by the same relator – ignores the text

and legislative history of § 3730(b)(5), conflicts with the Fifth Circuit's

interpretation of the first-to-file bar,[19] and will not further any goal of

the FCA.

(3) The first-to-file bar only applies to actions that are "related." *Verizon I*

and *Verizon II* are not related actions because the Second Amended

Complaint alleges that Verizon committed fraud on contracts and U.S.

agencies not at issue in *Verizon I* and would result in different

investigations and recoveries for the United States.

## <u>STANDARD OF REVIEW</u>

"Appellate courts review *de novo* the dismissal of a complaint for lack of

jurisdiction." *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208

(D.C. Cir. 2011) (citation omitted).

---

[19] *See Bailey v. Shell W. E&P Inc.*, 609 F.3d 710, 720-721 (5th Cir. 2010)
(allowing same relator to file related qui tam action in different jurisdictions).

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN DISMISSING *VERIZON II* WITH PREJUDICE – EARLIER FILED QUI TAM ACTIONS DO NOT REMAIN "CONSTRUCTIVELY" PENDING IN PERPETUITY.

Without explanation, the district court dismissed the case below with prejudice.[20] This was clear error. Under the ordinary meaning of "pending," *Verizon I* stopped being a pending action on February 28, 2011, when it was dismissed with prejudice. From that date on, *Verizon I* no longer barred related complaints under the first-to-file rule. Because the district court's dismissal rested solely on the first-to-file bar, the dismissal should have been without prejudice, and Shea should have been allowed to file an identical complaint the next day.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Netcoalition & Secs. Indus. & Fin. Mkts. Ass'n v. SEC*, 715 F.3d 342 (D.C. Cir. 2013) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004)). The first-to-file bar provides: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending

---

[20] JA 321-324. Shea specifically objected to dismissal with prejudice in his Opposition to Verizon's Motion to Dismiss. The district court's opinion granted Verizon's Motion to Dismiss without explicitly stating that dismissal was with prejudice as to Shea. JA 321. Shea then filed a Motion for Clarification solely to address the issue of prejudice. JA 9 (Dkt. 59). The district court denied the motion without issuing an opinion. JA 323.

action." 31 U.S.C. § 3730(b)(5). Black's Law Dictionary defines "pending" to

mean:

> Begun, but not yet completed; during; before the conclusion of; prior
> to the completion of; unsettled; undetermined; in process of settlement
> or adjustment. Thus an action or suit is "pending" from its inception
> until the rendition of final judgment.[21]

The first-to-file bar lacks any textual basis for departing from the ordinary

meaning of "pending." *Verizon I* was no longer "pending" after February 28, 2011,

when the case was dismissed after Verizon agreed to pay $93.5 million to settle.

By dismissing with prejudice, the district court implicitly found that *Verizon I*

somehow remained pending in perpetuity.

The district court's decision contradicts every circuit to consider the issue –

these courts have uniformly recognized that once a prior action has been dismissed

or resolved, that action is no longer pending and does not bar later-filed suits. *See*

*United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir. 2013)

(reversing the district court's dismissal with prejudice because "[w]e agree that

once a case is no longer pending the first-to-file bar does not stop a relator from

filing a related case."); *United States ex rel. Chovanec v. Apria Healthcare Group*

*Inc.*, 606 F.3d 361, 365 (7th Cir. 2010) (reversing the district's dismissal with

---

[21] Black's Law Dictionary 1021 (5th ed. 1979). Congress added the first-to-file bar
to the False Claims Act in 1986. Black's published its Sixth Edition in 1990. The
current edition defines "pending" in part as: "Remaining undecided; awaiting
decision <a pending case>." Black's Law Dictionary (9th ed. 2009).

prejudice because "§ 3730(b)(5) applies only while the initial complaint is 'pending.'"); _In re Natural Gas Royalties ex rel. United States v. Exxon Co., USA_, 566 F.3d 956, 964 (10th Cir. 2009) ("And yet, if that prior claim is no longer pending, the first-to-file bar no longer applies.").[22]

This Court has suggested it would interpret "pending" the same way: "[t]he statutory text imposes a bar on complaints related to earlier-filed, 'pending' actions. The command is simple: **as long as a first-filed complaint remains pending**, no related complaint may be filed." _United States ex rel. Batiste v. SLM Corp._, 659 F.3d 1204, 1210 (D.C. Cir. 2011) (emphasis added). In _Batiste_, this Court held that dismissal with prejudice was appropriate under the first-to-file bar, but only because the relator failed to file an amended complaint after the earlier-filed _qui tam_ action had been dismissed:

> Batiste argues that because Zahara's complaint was dismissed before Batiste's complaint was dismissed, his complaint should not have been dismissed with prejudice (implying that Batiste would like the

---

[22] _See also_, _United States ex rel. Beauchamp v. Academi Training Ctr., Inc._, 2013 U.S. Dist. LEXIS 39620 (E.D. Va. Mar. 21, 2013) ("The FCA's first-to-file bar deprives courts of subject matter jurisdiction over later-filed FCA actions while an earlier-filed action based on the same material elements of fraud remains pending."); _United States v. Alpharma, Inc._, 2013 U.S. Dist. LEXIS 29802, 31-32 (D. Md. Mar. 5, 2013) ("If the Court were to dismiss the Amended Complaint, it would do so without prejudice, and the first-to-file rule would not preclude Mr. Palmieri from filing an identical pleading under a new case number tomorrow, as _Chovanec_ and _In re Natural Gas Royalties_ make clear."); _United States ex rel. Hoggett v. Univ of Phoenix_, 2012 U.S. Dist. LEXIS 93812 (E.D. Cal. July 5, 2012) ("In the instant case, Hendow was dismissed before Relators brought their suit, and therefore was not 'pending' under § 3730(b)(5).").

opportunity to amend his complaint and bring this case again). Batiste, however, waived this argument. Zahara was dismissed eighteen months prior to the Batiste dismissal. During that time, Batiste never asked for leave to amend his complaint in the district court; thus, he has waived his opportunity to file a new suit on these same grounds now.

*Batiste*, 659 F.3d at 1211.

Shea did exactly what this Court told Batiste he should have done to avoid dismissal with prejudice: file an amended complaint after the earlier filed *qui tam* was no longer pending. The district court ignored this Court's decision in *Batiste* and the ordinary meaning of "pending" by dismissing Shea's Second Amended Complaint with prejudice. Even assuming the first-to-file bar applies, Shea should have been allowed to file a new complaint the day after dismissal. The district court's decision should be reversed on that basis alone.

## II. THE FIRST-TO-FILE RULE DOES NOT APPLY BECAUSE *VERIZON I* WAS NOT "PENDING" WHEN THE SECOND AMENDED COMPLAINT WAS FILED.

Because *Verizon I* does not remain pending forever, the district court committed further error by only considering whether subject matter jurisdiction existed under the first-to-file bar when Shea first filed his initial complaint in *Verizon II*, not when he filed his Second Amended Complaint.[23] The district court reasoned that because *Verizon I* was pending when Shea filed his initial complaint

---

[23] JA 316-317.

in *Verizon II*, it was irrelevant that Shea filed the Second Amended Complaint after *Verizon I* had been resolved.[24]

Other than the district court's decision in this case, only two courts have squarely addressed whether subject matter jurisdiction under the first-to-file bar should be determined by considering whether an earlier-filed *qui tam* action was pending when the original complaint was filed or when the complaint was amended. *See United States v. Alpharma, Inc.*, 2013 U.S. Dist. LEXIS 29802, 31-32 (D. Md. Mar. 5, 2013) (holding that subject matter jurisdiction under the first-to-file bar should be determined when relator filed an amended complaint); *U.S. ex rel. Branch Consultants, L.L.C., v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 259 (E.D. La. 2011) (holding that subject matter jurisdiction under the first-to-file bar should be determined when the original complaint was filed).[25]

The court in *Alpharma* considered and rejected the reasoning of *Branch Consultants*, finding "more persuasive the discussion of this issue in the appellate cases of *Chovanec* [*supra*], *Batiste* [*supra*], and *In re Natural Gas Royalties*[supra], which grounded their analysis in the first-to-file rule's textual limitation to 'pending' cases." 2013 U.S. Dist. LEXIS 29802, 30-31. Based on those cases, the court held:

---

[24] *Id.*

[25] The same judge who decided *Branch Consultants* decided a related case on the same day that adopted the same reasoning. *See United States ex rel. Denenea v. Allstate Ins. Co.*, 2011 U.S. Dist. LEXIS 6419 (E.D. La. Jan. 2011).

In sum, the relator here filed an Amended Complaint, at a time when the prior qui tam suit was no longer pending. If the Court were to dismiss the Amended Complaint, it would do so without prejudice, and the first-to-file rule would not preclude Mr. Palmieri from filing an identical pleading under a new case number tomorrow, as *Chovanec* and *In re Natural Gas Royalties* make clear. It would elevate form over substance to dismiss the Amended Complaint on first-to-file grounds at this juncture. Accordingly, I conclude that the first-to-file rule does not bar Mr. Palmieri's Amended Complaint

2013 U.S. Dist. LEXIS 29802, 31-32.

The court in *Alpharma* interpreted this Court's decision in *Batiste* as "suggesting that the filing of an amended complaint could have cured the defect [caused by the first-to-filed bar]." *Id.* at 29. The court further pointed out that in *Chovanec*, where the Seventh Circuit reversed the district court for dismissing with prejudice a *qui tam* action under the first-to-file bar because the earlier-filed action was no longer pending, the district court on remand allowed the relator to file an amended complaint, rather than requiring a new suit. *Id.* at 28.[26]

In contrast to *Alpharma*, both *Branch Consultants* and the district court below relied on the general rule that "the jurisdiction of the court depends upon the state of things at time of the action brought." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004).[27]  However, this Court has recognized exceptions to this general rule, including 28 U.S.C. § 1653, which provides:

---

[26] The district court's minute entry in *Chovanec* allowing the amended complaint is at Dkt. 55, 04-cv-04543. The court in *Branch Consultants* apparently did not check the *Chovenec* docket on remand and wrongly cited *Chovanec* as a supporting case.
[27] JA 316-317.

"[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See e.g.*, *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 585 (D.C. Cir. 1993) (applying 28 U.S.C. § 1653 to find jurisdiction where the facts supporting jurisdiction were clear from the record). This Court has explained that "Congress intended [28 U.S.C. § 1653] to permit amendment broadly to avoid dismissal of suits on technical grounds." *Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982) (superseded by statute on other grounds); *Mathews v. Diaz*, 426 U.S. 67, 75 (U.S. 1976) (finding jurisdiction restored under 28 U.S.C. § 1653 where plaintiff satisfied condition of jurisdiction after joining class action suit, instead of before).[28]

The district court's holding elevates form over substance and is precisely the type of dismissal on technical grounds disfavored by 28 U.S.C. § 1653. Once *Verizon I* was no longer pending, the jurisdictional statement in Shea's original complaint in *Verizon II* was, at worst, technically defective. But when Shea filed

---

[28] *Matthews* involved a class action law suit challenging the constitutionality of Medicare's durational residency requirements for resident aliens. One of the plaintiffs, Espinosa, had not applied for the Medicare benefits at issue when he joined the suit. 426 U.S. at 71. 42 U.S.C. § 405(g) required an application as a nonwaivable condition of jurisdiction. *Id.* at 75. After the Secretary of Health, Education, and Welfare moved to dismiss, Espinosa filed an application for the first time. *Id.* at 72. Relying on 28 U.S.C. § 1653, the court found that Espinosa's later filed application restored subject matter jurisdiction, even though the court plainly lacked subject matter jurisdiction when Espinosa initially joined the suit. *Id.* at 75.

- 15 -

his Second Amended Complaint, his jurisdictional statement was not defective because *Verizon I* was no longer pending.

The district court's decision further conflicts with *United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 14 (D.D.C. 2003). In *Ortega*, the relator attempted to avoid dismissal under the first-to-file bar by arguing that her amended complaint should relate back to her original complaint, which she asserted predated the other *qui tam* actions at issue. *Id.*[29] The court rejected that argument, and held that "it is clearly outside the intent and purpose of § 3730(b)(5) to permit relation back." *Id.* Consequently, the court found that the first-to-file rule barred the amended complaint.

Amendments to *qui tam* complaints cannot be a "heads defendants win, tails relators lose" proposition. If relators cannot avoid the first-to-file bar by having their amended complaints relate back to original complaints, then defendants should not be able to argue that amended complaints are jurisdictionally irrelevant under the bar. Amendments to *qui tam* complaints either have jurisdictional

---

[29] In *Ortega*, the amended complaint at issue included kickback claims not alleged in the original complaint. The court could have simply relied on its Rule 15 holding that the new kickback claims did not relate back to the original complaint because they did not arise out the same conduct, transaction, or occurrence at issue in the original complaint. But the court went beyond that to explicitly hold that the first-to-file rule never permits relation back, even if the new allegations satisfy Rule 15.

significance under the first-to-file bar, or they do not. Defendants should not be allowed to have it both ways.

## III. *VERIZON I* DOES NOT BAR *VERIZON II* UNDER THE FIRST-TO-FILE RULE BECAUSE SHEA FILED BOTH ACTIONS.

Relying on a plain language analysis, the district court held that the first-to-file rule applies to subsequent related actions filed by the same relator.[30] The district court's holding ignores the text and legislative history of § 3730(b)(5), conflicts with the Fifth Circuit's interpretation of the first-to-file bar, and will not further any goal of the FCA. *See Bailey v. Shell W. E&P Inc.*, 609 F.3d 710, 720-721 (5th Cir. 2010) (allowing same relator to file related *qui tam* action in different jurisdictions).

### A. THE DISTRICT COURT'S PLAIN LANGUAGE ANALYSIS IGNORED THE "INTERVENE" PRONG OF THE STATUTE.

"Where the literal reading of a statutory term would 'compel an odd result,' *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989), we must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454 (U.S. 1989). The first-to-file bar states: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5)(emphases added).

---

[30] JA 313-315.

The district court reasoned that "no person other than government" must include the original relator.[31] That literal interpretation might make sense when considering the "bring a related action prong" of the first-to-file bar. But applying that interpretation to the "intervene" prong makes no sense. Relators cannot intervene in their own suits. If the statute read: "when a person brings an action under this subsection, no person other than the Government may intervene," no one would interpret "no person other than the Government" to include the original relator. "[N]o person other than the Government" should have the same meaning for both the intervention prong and the "bring a related action" prong. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (U.S. 2005) ("a normal rule of statutory interpretation is that identical words used in different parts of the same statute are generally presumed to have the same meaning.")

---

[31] JA 314. The district court relied on *U.S. ex rel. Smith v. Yale-New Haven Hospital, Inc.*, 411 F. Supp. 2d 64, 74-75 (D. Conn. 2005) and *U.S. ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999) in support of its plain language argument. *Id. Wagner* involved two relators attempting to intervene in *another* relator's *qui tam* action. In *Smith*, the court noted that there was "no reason to believe that somehow the information underlying the allegations in Qui Tam Two was somehow unavailable to him at the filing of Qui Tam One." *Id.* at 75, n. 10. The court concluded: "As no exception exists for a different original source, there is no reason to create an exception simply because the same original source is bringing both suits. In fact, the burden is properly placed on the original relator to ensure that he or she comes forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits." *Id.* at 75. Here, Shea told the government everything he knew before filing *Verizon I*. He then conducted additional investigation before filing *Verizon II*.

- 18 -

**B.    THE LEGISLATIVE HISTORY INDICATES THAT CONGRESS INTENDED 3730(B)(5) TO PREVENT MULTIPARTY SCRUMS, NOT SUCCESSIVE SUITS BROUGHT BY THE SAME RELATOR.**

The scant legislative history for the first-to-file bar supports the interpretation that "person" was intended to apply to different "persons," not the same "person."  The Senate Report for the 1986 amendments explained that the first-to-file bar:

> further clarifies that only the Government may intervene in a qui tam action.  While there are few known instances of multiple parties intervening in past qui tam cases . . . the Committee wishes to clarify in the statute that private enforcement under the civil False Claims is not meant to produce class actions or multiple separate suits based on identical facts and circumstances.

S. Rep. No. 99-345 at 25 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5290 (internal citation omitted). This report indicates that Congress was primarily concerned with preventing third-party intervention. Congress included the "related" case requirement to deal with the concern expressed in the Report about "multiple separate suits based on identical facts and circumstances." Nothing in the legislative history indicates that Congress had any concern with preventing the same relator from filing a subsequent suit upon additional investigation.

**C.    THE DISTRICT COURT'S DECISION CONFLICTS WITH THE FIFTH CIRCUIT.**

The Fifth Circuit has held that the first-to-file bar does not apply when the same relator files the same complaints in different jurisdiction because the bar only

prohibits subsequent actions filed by *another*. *See* _Bailey v. Shell W. E&P Inc._, 609 F.3d 710, 720-721 (5th Cir. 2010). Under this decision, "no person other than the government" does not include the original relator. Under the district court's decision, "no person other than the government" includes the original relator.

In Bailey, defendants first filed a complaint against relator in Texas state court. Relator then filed a *qui tam* complaint against defendants in the U.S. District Court for the District of Colorado. Next, relator added a *qui tam* counterclaim to the Texas case, removed that case to the Southern District of Texas, and then moved to transfer the Texas case to Colorado. Defendants won the venue battle, persuading the Colorado district court to transfer its case to Texas and the Texas district court to deny transferring the case to Colorado. 609 F.3d at 717-718. Relator argued that denying the transfer to Colorado was improper because the first-to-file rule deprived the Texas court of jurisdiction. The Fifth Circuit rejected that argument:

> We agree with the reasoning of the District of Colorado court when ordering the transfer to the Southern District of Texas: the first-to-file bar "does not apply when the same plaintiff, for whatever reason, files the same claim in a different jurisdiction as the Plaintiffs did here." [_United States v. Kinder Morgan Co2 Co., L.P._, 2005 U.S. Dist. LEXIS 31103 (D. Colo. Nov. 21, 2005)], 2005 WL 3157998, at *2. As we recently noted in [_United States ex rel. Branch Consultants v. Allstate Ins. Co_., 560 F.3d 371 (5th Cir. 2009)], if an FCA claim "ha[s] already been filed by *another*, the district court lack[s] subject matter jurisdiction . . . ." 560 F.3d at 376 (emphasis added.)

> The two competing policy goals of § 3730(b) are to encourage whistleblowing and to discourage opportunistic behavior. *Id.* Neither of the statutory purposes are served when the same plaintiff makes the same claim in a different jurisdiction. *Kinder Morgan Co.*, 2005 U.S. Dist. LEXIS 31103, 2005 WL 3157998, at *2. We therefore construe the first-to-file bar of § 3730(b)(5) as inapplicable to one plaintiff who files the same claim in multiple jurisdictions.

*Bailey*, 609 F.3d at 720-721.

The district court read *Bailey* as a mere procedural exception permitting relators to file the same *qui tam* claims in different jurisdictions.[32] But there are no procedural exceptions to the first-to-file bar. *See United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 12 (D.D.C. 2003) ("Section 3730(b)(5) sets up an 'exception-free, first-to-file bar.'") (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1183 (9th Cir. Cal. 2001)). Nothing in the text of the first-to-file rule supports an interpretation that a relator could file a subsequent related case in a second jurisdiction, but cannot subsequently file a related action in the same jurisdiction. Either the first-to-file bar applies to related suits filed by same relator, or it does not.

Further, *Bailey* never suggested it was announcing a procedural exception. Instead, the court went out of its way to emphasize the following language from *Branch Consultants*: "[u]nder this provision, if Branch's claim had already been filed by *another*, the district court lacked subject matter jurisdiction." 560 F.3d at

---

[32] JA 315.

376 (same emphasis added by *Bailey*). As the Colorado district court held: "[i]t would be reasonable to read the statute as prohibiting the same claim being made by a different party rather than the same party as is the case here. With such an interpretation, the first-to-file rule would attach and eliminate duplicative proceedings while still serving the purposes of the False Claims Act." *United States v. Kinder Morgan Co2 Co., L.P.*, 2005 U.S. Dist. LEXIS 31103 * 7 (D. Colo. 2005). Again, the court in *Kinder Morgan* deliberately quoted the following language from the Tenth Circuit in support of its decision: "[t]he pendency of the initial qui tam action consequently blocks *other private relators* from filing copycat suits that do no more than assert the same material elements . . ." *Id.*, n. 4 (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d, 1276, 1279 (10th Cir. 2004) (emphasis added)).

*Bailey* thus cannot be limited as a mere procedural exception for the same relator to file related actions in different jurisdictions. And there is no logic supporting such an exception. If Shea had filed *Verizon I* in a different district, would the district court's decision have been different?

### D. THE DISTRICT COURT'S INTERPRETATION DOES NOT FURTHER THE FCA'S GOALS.

The purpose of the FCA is to encourage "whistleblowers to approach the government and file suit as early as possible." *United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 12 (D.D.C. 2003) (Lamberth, J.). The

first-to-file bar advances that goal in two ways. First, the rule encourages "prompt disclosure of fraud by creating a race to the courthouse among those with knowledge of fraud." *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 821 (9th Cir. 2005). Second, the bar provides a financial incentive for relators to come forward with knowledge of wrongdoing by eliminating parasitic lawsuits that reduce the original relator's share. *See Ortega*, *supra*, 240 F. Supp. 2d at 12 ("permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing"). *See also, In re Natural Gas Royalties ex rel. United States v. Exxon Co., USA*, 566 F.3d 956, 961 (10th Cir. 2009) ("The first-to-file bar thus functions both to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim.")

Applying the first-to-file rule to subsequent complaints filed by the same relator does not advance either of the above goals. First, relators cannot race themselves to the courthouse. That incentive only makes sense if the first-to-file rule applies to third-parties unrelated to the original relator. Second, the district court's interpretation would not create any additional financial incentive for a relator. Subsequent suits filed by the same relator do not "divide the bounty" amongst third-parties. The original relator still retains the full economic benefit

- 23 -

from the suits. The district court's opinion creates a perverse incentive for a relator to file the broadest, speculative claims, because the relator would be precluded by his own earlier suit from discovering and alleging additional wrongdoing.

No underlying policy would be advanced by applying the first-to-file rule to subsequent complaints filed by the same relator. While the government has an interest in preventing piecemeal litigation, the government does not have an interest in discouraging relators from discovering additional fraud and coming forward with knowledge of that wrongdoing.

It is undisputed that Verizon had notice of Shea's second case before it settled *Verizon I* for $93.5 million.  If Verizon felt that the two cases were so related that they could not be brought separately, Verizon could have moved to consolidate. Verizon chose instead to resolve the first case piecemeal for $93.5 million.

## IV.  *VERIZON I* AND *VERIZON II* ARE UNRELATED BECAUSE *VERIZON II* ALLEGES THAT VERIZON COMMITTED FRAUD ON CONTRACTS AND AGENCIES NOT AT ISSUE IN *VERIZON I.*

Only if this Court concludes that *Verizon I* was somehow constructively "pending" when Shea filed his amended complaints, and the first-to-file bar applies to the same relator, should the Court even consider whether *Verizon I* and *II* are "related." The first-to-file bar only applies to "a *related* action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (emphasis added). This

- 24 -

Circuit has interpreted "related" to mean a later filed action "incorporating the same material elements of fraud as an action filed earlier." *United States ex rel. Hampton v. Columbia/Hca Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003). "Under this standard, two complaints need not allege identical facts for the first-filed complaint to bar the later-filed complaint." *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011). In determining whether a later-filed complaint incorporates the same material elements, courts consider, among other factors, whether the second complaint would "give rise to a different investigation or recovery." *Id.* at 1210. (*citing United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003) ("[A]n examination of possible recovery . . . aids in the determination of whether the later-filed complaint alleges a different type of wrongdoing on new and different material facts.")

In *Batiste*, the most recent D.C. Circuit case to address whether two complaints are related, both complaints named the same parent company as the lead defendant. 659 F.3d at 1209. While the complaints focused on different subsidiary offices, both alleged a nationwide scheme. *Id.* Both complaints alleged a fraud beginning in 2004, that this fraud involved falsifying forbearances, and that corporate culture encouraged it. *Id.* The D.C. Circuit concluded:

> Under the *Hampton* material facts test, these complaints allege essentially the same corporation-wide scheme. The Zahara Complaint would suffice to equip the government to investigate SLM's allegedly

> fraudulent forbearance practices nationwide. Batiste's additional details would not give rise to a different investigation or recovery.

659 F.3d 1204, 1209-1210.

Here, *Verizon I* and *Verizon II* plainly give rise to different investigations and different recoveries. *Verizon I* was limited to the FTS2001 Contract and the FTS2001 Bridge Contract with GSA. Complaint, ¶¶ 28-64 (JA 145-151). *Verizon I* did not allege a corporate-wide Verizon/MCI fraud on every telecommunications contract with the United States. GSA was the only U.S. agency at issue in *Verizon I*. And *Verizon I* specifically *excluded* the Federal Universal Service Charge from its list of illegal surcharges. Complaint, ¶ 66 ("The Federal Universal Service Fund surcharge, the PICC surcharge, and certain other taxes were acceptable line item charges under the FTS 2001 Contract.") (JA 151).

*Verizon II* alleges that Verizon committed fraud on 20 contracts not at issue in *Verizon I*. SAC, ¶ 28 (JA 59). While some of these contracts were with GSA, the other contracts were with the United States Postal Service, Department of Defense, Federal Emergency Management Agency, Department of Justice, Department of Navy, and the Federal Aviation Administration. SAC, ¶ 28 (JA 59). The Second Amended Complaint repeatedly alleges that Verizon improperly charged the Federal Universal Service Charge, a surcharge not at issue in *Verizon I*. ¶¶ 30-41 (JA 61-66).

- 26 -

The different contracts, different U.S. agencies, and different surcharges make *Verizon II* materially distinct from *Verizon I*. Each of the 20 contracts at issue in *Verizon II* requires a separate investigation and will lead to a recovery independent from *Verizon I*. *Verizon II* will not lead to a double recovery. Verizon paid $93.5 million to settle *Verizon I* solely for the "Covered Conduct" in that agreement.[33]

In addition to the court below, two D.C. district courts have held that complaints which allege similar fraudulent schemes on different contracts with different federal agencies do not materially differ under the first-to-file rule. *See United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 73 (D.D.C. 2011) (Lamberth, J.); *United States ex rel. Folliard v. CDW Tech. Servs.*, 722 F.

_____

[33] The agreement defined "Covered Conduct" as follows: "From April 20, 2004, through September 30, 2010, in connection with the provision of services and products to any department, agency, branch, or institution of the United States through Verizon's General Services Administration (GSA) Contract No. GSOOT99NRD2002 (also known as FTS2001) and Contract No. GSOOT06NSD0001 (also known as FTS2001 Bridge Contract), and any delivery and task orders issued thereunder (hereinafter collectively referred to as "Contracts"), Verizon submitted false claims for payment under the Contracts for reimbursement or credit of the following taxes, duties or surcharges- Ad Valorem Surcharge (a/k/a Property Tax Surcharge); Federal Regulatory Fee Surcharge (a/k/a Carrier Cost Recovery Charge (CCRC)); all taxes, duties or surcharges applied to the GSA Management Service Fee, except the Federal Universal Service Fund (FUSF); State Telecommunications Relay Service Surcharge; Deaf Equipment Acquisition Fund (DEAF) Tax Surcharge; High Cost Fund Surcharge; Lifeline Surcharge;· Public Utility Commission Fee Surcharge; Tele Relay Service (M); CCRC Interconnected Voice Over Internet Protocol; State Universal Service Fund; and FUSF applied to unallowable surcharges." (JA 260-261).

Supp. 2d 37 (D.D.C. 2010) (Huvelle, J.). Both courts applied a notice-based

standard to the first-to-file bar. Under this standard, the dispositive factor in

determining whether two complaints are related is whether the earlier-filed

complaint gave the government sufficient notice to discover the fraud in the later

filed-complaint. *See Synnex*, 798 F. Supp. 2d at 73 ("Crennen's allegations

pertaining to HP products gave the government sufficient notice to discover the

allegedly fraudulent Cisco products."); *CDW*, 722 F. Supp. 2d at 43 ("It is

reasonable to conclude that the government, armed with Liotine's allegations about

government procurement of HP products from CDWG, was 'equipped . . . on its

own' to discover the extent to which defendants had other federal procurement

contracts that were governed by the TAA and, in turn, whether any wrongdoing

had occurred.")[34]

> For the reasons discussed below, undersigned counsel respectfully suggest

that the court below, *Synnex*, and *CDW* incorrectly applied a notice-based standard

---

[34] Certain language in *Batiste* suggests that this Court adopted a notice-based
standard to determine whether two complaints are related: "Zahara's complaint
suffices to put the U.S. government on notice of allegedly fraudulent forbearance
practices . . . The Zahara Complaint would suffice to equip the government to
investigate SLM's allegedly fraudulent forbearance practices nationwide." 659
F.3d at 1209. However, the analysis did not end there. This Court went on to
specifically state that the additional details in the later-filed complaint "would not
give rise to a different investigation or recovery." *Id.* at 1210. Under a notice-based
standard that last statement is irrelevant. Either the government had notice or it did
not. Because of that additional analysis, this Court does not appear to have adopted
a pure notice-based standard under the first-to-file bar.

to the first-to-file bar, and that such a standard undermines the policies underlying the FCA and would prevent valuable *qui tam* suits. The Tenth Circuit – the only Circuit to squarely address the issue – rejected applying a notice-based standard to the first-to-file bar. *See Natural Gas Royalties*, *supra*, 566 F.3d at 964 (10th Cir. 2009) ("While the allegations in the Coalition complaint might have been sufficient to put the government on notice of the fraud that Mr. Grynberg alleges against Exxon, ARCO, Oxy-USA, and Cross Timbers, that complaint did not name any of these parties as defendants.")

But even if this Court applies a notice-based standard to the first-to-file bar, the court below, *Synnex*, and *CDW* were still incorrectly decided, because they go far beyond *Batiste* and wrongly conclude that fraud by a defendant on one contract provides notice to the government of fraud by the same defendant on a different contract with a different agency. In analogous circumstances, the Fifth Circuit has held that complaints alleging similar fraudulent schemes by different defendants are unrelated under the first-to-file bar. *See Branch Consultants*, *supra*, 560 F.3d

371, 379 (allegations in a first-filed action did not bar related allegations against wholly unrelated defendants brought in a subsequent action).[35]

### A. THE TENTH CIRCUIT CORRECTLY CONCLUDED THAT COURTS SHOULD NOT APPLY A NOTICE-BASED STANDARD TO THE FIRST-TO-FILE BAR.

In *Natural Gas Royalties*, the Tenth Circuit held that "[t]he defendant's identity is a material element of a fraud claim. Two complaints can allege the very same scheme to defraud the very same victim, but they are not the same claim unless they share common defendants." 566 F.3d at 962. The court reasoned:

> Requiring a common identity between defendants when applying the first-to-file bar makes more sense within the overall structure of the FCA. While the bar does eliminate opportunistic relators, most of these relators would be eliminated by the public disclosure bar anyway. Its true value lies in protecting the recovery of the first relator who files, even when other legitimate relators might exist with direct and independent knowledge of their own. This maintains the monetary incentive to bring a qui tam action by avoiding division of the spoils. It also encourages a relator to hurry up and file. When the pending action is against an entirely different defendant, however, the two relators are not fighting over the same spoils. The first relator's recovery remains unaffected whether the second relator files or not. If that second relator brings nothing to the table that the first suit had not already offered, then his suit will be barred under the public disclosure bar; otherwise, the purposes of the FCA are best vindicated by allowing his suit to proceed.

---

[35] These decisions do not conflict with *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003). In Hampton, the earlier-filed complaint named HCA, while the later filed complaint named HCA and HCA's subsidiaries. The court found that merely adding on subsidiaries was not a material difference. *Id.* In contrast, *Natural Gas Royalties* and *Branch Consultants* involved two complaints naming different, unrelated defendants, not corporate subsidiaries.

The fact that § 3730(b)(5) applies only when another qui tam action is "pending" makes a notice-based standard even more dubious. If the first-to-file bar had been meant simply as a more draconian public disclosure bar, Congress would not have limited it to "pending" actions. While filing the complaint might put the government on notice, and while the government might remain on notice while the action is pending, the government does not cease to be on notice when a relator withdraws his claim or a court dismisses it. And yet, if that prior claim is no longer pending, the first-to-file bar no longer applies. The "pending" requirement much more effectively vindicates the goal of encouraging relators to file; it protects the potential award of a relator while his claim remains viable, but, when he drops his action another relator who qualifies as an original source may pursue his own.

566 F.3d at 963-964.

The Tenth Circuit also noted that the government may "lack the resources (or, indeed, the political will) to pursue a claim, even if it has been set on its trail. The government might lack sufficient evidence of its own to win in court. In these cases, qui tam suits provide a valuable way to deter false claims and compensate the government for its lost revenue." *Id*. at 963. In *Natural Gas Royalties*, the court concluded that allowing the later-filed complaints would (a) assist the government in detecting fraud, and (b) lead to a recovery distinct from the earlier-filed action. *Id*. Both factors are true here: *Verizon II* will assist the government in identifying other telecommunications contracts where Verizon likely committed fraud, and will result in a recovery independent from *Verizon I*. This Court should follow the Tenth Circuit and conclude that a notice-based standard does not apply to the first-to-file bar and that *Verizon I* and *II* are unrelated.

### B.   APPLYING A NOTICE-BASED STANDARD TO THE FIRST-TO-FILE BAR WOULD PREVENT VALUABLE QUI TAM LAWSUITS.

Imagine if after *Verizon I* was filed, a Verizon insider, with direct knowledge that Verizon was illegally charging the United States prohibited surcharges under other telecommunications contracts, filed a *qui tam* action alleging violations of the FCA. Under a notice-based standard, the first-to-file rule would bar that later-filed complaint because *Verizon I* generally put the government on notice that Verizon was charging illegal surcharges. That cannot be the law. Such an interpretation directly undermines the FCA's goals. The court in *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 474 F.Supp.2d 75, 87-88 (D.D.C. 2007) (Lamberth, J.) recognized that those goals include encouraging citizens to come forward with knowledge of wrongdoing and enhancing the government's ability to recover losses caused by fraud.

### C.   EVEN IF THIS COURT CONCLUDES THAT A NOTICE-BASED STANDARD SHOULD APPLY, THE COURT BELOW, *SYNNEX*, AND *CDW* STILL WENT TOO FAR.

The court below, *Synnex*, and *CDW* did not address the Tenth Circuit's well-reasoned arguments for rejecting a notice-based standard under the first-to-file bar. Further, *Synnex* and *CDW*, like this case, are outliers because the frauds alleged on different contracts in the later-filed complaints in those cases would have led to independent recoveries. The lack of independent recovery was a significant factor in the D.C. Circuit's decision in *Batiste*. 659 F.3d 1204, 1209-121 (concluding that

complaints are related in part because "Batiste's additional details would not give rise to a different investigation or recovery.") In analogous circumstances, the Fifth Circuit, which has not expressly rejected a noticed-based standard, considered "whether allegations in a first-filed action can bar related allegations against wholly unrelated defendants brought in a subsequent action." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 379 (5th Cir. 2009). The Fifth Circuit concluded:

> Rigsby [the earlier-filed complaint] does not allege a true industry-wide fraud or concerted action among a narrow group of participants. Rather, looking only at the facts pleaded (not any public information, which is not part of the first-to-file analysis), Rigsby implicates, at most, four specific WYO insurers among the approximately ninety-five WYO insurers conducting business in the Louisiana and Mississippi areas during Hurricane Katrina. **Thus, Rigsby tells the government nothing about which of the ninety-one other WYO insurers (and adjusting firms working for or with those insurers), if any, actually engaged in any fraud**. . .

> . . .Under these circumstances, forcing the government to expend its limited time and resources wading through the records of ninety-one WYO insurers in an attempt to identify specific instances of fraud would completely undermine the enforcement component of the FCA's qui tam provisions.

560 F.3d at 380.

The same reasoning applies here. If alleging that a different defendant committed the same fraud as alleged in an earlier filed action is a material difference under the first-to-file bar, then alleging that the same defendant

- 33 -

committed a similar fraud on different contracts with different federal agencies is also a material difference.

In an ideal world, after receiving *Verizon I*, the government would have examined every telecommunications contract with MCI/Verizon to determine if Verizon was charging illegal surcharges under those contracts. But the government may not have investigated the other contracts for any number of reasons, including a lack of resources. Shea continued his investigation after filing *Verizon I*, applied his industry expertise, and identified the contracts where Verizon/MCI was most likely charging the government illegal surcharges. Determining that *Verizon I* and *Verizon II* are unrelated under the first-to-file bar "further[s] the [FCA's] goal of citizen-assisted enforcement." *Natural Gas Royalties*, 566 F.3d at 963.

## CONCLUSION

For the above reasons, Relator Shea respectfully requests that this Court reverse the judgment below and find that (1) 31 U.S.C. § 3730(b)(5) does not bar this action, or (2) in the alternative, that dismissal under 31 U.S.C. § 3730(b)(5) should be without prejudice.

Respectfully submitted,

/s/ Christopher B. Mead
Mark London
Christopher B. Mead
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036
Tel.: (202) 331-3334
Fax: (202) 785-4280
cmead@londonandmead.com

*Counsel for Appellant*

Dated: July 12, 2013

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*8,423*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>July 12, 2013    </u>        <u>/s/ Mark London                    </u>
                                  *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 12th day of July, 2013, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Randolph D. Moss
> Brian M. Boynton
> Wilmer Cutler Pickering Hale and Dorr LLP
> 1875 Pennsylvania Avenue, NW
> Washington, DC  20006
> (202) 663-6000
>
> *Counsel for Appellee*

I further certify that on this 12th day of July, 2013, I caused the required

copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk

of the Court.

<div align="right">

/s/ Mark London
*Counsel for Appellant*

</div>