ORAL ARGUMENT NOT YET SCHEDULED

No. 12-7133

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,
EX REL. STEPHEN M. SHEA,
*Plaintiff-Appellant*,

*v.*

CELLCO PARTNERSHIP, DOING BUSINESS AS VERIZON WIRELESS;
VERIZON BUSINESS NETWORK SERVICES INC.;
VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES, INC.,
DOING BUSINESS AS VERIZON BUSINESS SERVICES,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Columbia, No. 09-cv-1050 (Kessler, J.)

## BRIEF FOR DEFENDANTS-APPELLEES

RANDOLPH D. MOSS
BRIAN M. BOYNTON
BRIAN H. FLETCHER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
randolph.moss@wilmerhale.com

August 12, 2013

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Defendants-Appellees make the following certificate of counsel:

### A.    Parties And Amici

Plaintiff-Appellant Stephen M. Shea appeared in the district court and is a party in this Court.

Defendants-Appellees Verizon Business Network Services Inc., Verizon Federal Inc., MCI Communications Services, Inc. d/b/a Verizon Business Services, and Cellco Partnership d/b/a Verizon Wireless appeared in the district court and are parties in this Court.

The United States of America did not intervene in the district court, *see* JA34-35, but did file a Statement of Interest "request[ing] that if the Court dismisses this action, that such dismissal be without prejudice to the United States," JA302.  The United States is not a party in this Court.

No amici appeared in the district court.  On July 11, 2013, this Court granted the Chamber of Commerce of the United States leave to participate in this appeal as an amicus curiae supporting Defendants-Appellees.

### B.    Rulings Under Review

References to the rulings at issue in this appeal appear in the Brief for Plaintiff-Appellant Shea.

## C.     Related Cases

This case has not previously been before this Court or any other court other than the district court below.

A related case brought by Plaintiff-Appellant Shea under the False Claims Act against Verizon Communications Inc. asserting the same theory of recovery at issue here was previously before the district court.  *See United States ex rel. Shea v. Verizon Commc'ns Inc.*, No. 07-cv-111 (D.D.C. filed Jan. 17, 2007).  The United States intervened in that case, and the parties reached a settlement agreement in 2011 that did not include any admission of liability.  The United States filed a notice of appeal to this Court of the district court's final judgment allocating settlement proceeds, but later voluntarily dismissed the appeal.  *See* Order, *United States ex rel. Shea v. Verizon Commc'ns Inc.*, No. 12-5215 (D.C. Cir. July 13, 2012).


/s/ Randolph D. Moss
RANDOLPH D. MOSS

August 12, 2013

- ii -

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Defendants-Appellees provide the following corporate disclosure statement:

Cellco Partnership is a general partnership formed under Delaware law in which Verizon Communications Inc. and Vodafone Group Plc indirectly hold 55 percent and 45 percent partnership interests, respectively.  Both Verizon Communications Inc. and Vodafone Group Plc are publicly traded companies.

Verizon Business Network Services Inc. is owned by MCI Communications Corporation, which is owned by Verizon Business Global LLC, which is owned by Verizon Communications Inc.

MCI Communications Services, Inc. is owned by MCI Broadband Solutions, Inc., which is owned by Terremark Worldwide, Inc., which is owned by Verizon Business Network Services Inc., which is owned by Verizon Communications Inc.

Verizon Federal Inc. is owned by Verizon Investments LLC, which is owned by Verizon Communications Inc.

As relevant to the litigation, Cellco Partnership, Verizon Business Network Services Inc., MCI Communications Services, Inc., and Verizon Federal Inc. are telecommunications service providers.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..................................................................................i

CORPORATE DISCLOSURE STATEMENT ....................................... iii

TABLE OF AUTHORITIES .................................................................vi

GLOSSARY .......................................................................................... xii

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT .........................................................5

STATEMENT OF ISSUES .......................................................................5

RELEVANT STATUTES ..........................................................................6

STATEMENT OF FACTS ........................................................................6

    A.    Shea Files *Verizon I* ................................................................6

    B.    Shea Files *Verizon II* ..............................................................8

    C.    Shea Amends His Complaint in *Verizon II* .........................10

    D.    The District Court Dismisses Shea's Suit ...........................12

SUMMARY OF ARGUMENT ...............................................................15

STANDARD OF REVIEW ......................................................................17

ARGUMENT ...........................................................................................18

I.    THE DISTRICT COURT CORRECTLY DISMISSED SHEA'S SUIT WITH PREJUDICE UNDER THE FIRST-TO-FILE BAR ................................18

    A.    This Suit Is "Related" To *Verizon I* ....................................18

        1.    The district court correctly applied a "notice-based" standard to the first-to-file bar ......................................19

2.    *Verizon I* and *Verizon II* are related under any standard ........................................................................22

B.    The First-To-File Bar Applies To Actions Brought By The Same Relator ..................................................................27

C.    The Bar Applies Even Though *Verizon I* Is No Longer Pending ........................................................................33

1.    The first-to-file bar continues to prohibit related suits even after the original action is no longer pending ..................................................................33

2.    Jurisdiction under the first-to-file bar is determined when an action is brought ........................................40

II.    IN THE ALTERNATIVE, THIS COURT SHOULD AFFIRM THE DISMISSAL OF SHEA'S SUIT BASED ON THE FCA'S PUBLIC-DISCLOSURE BAR ..................................................................45

A.    The Material Elements of Shea's Allegations Were Publicly Disclosed ................................................................46

B.    Shea Does Not Qualify As An Original Source ..................................49

III.    SHEA'S CLAIMS CANNOT SATISFY RULES 8(a) AND 9(b) ..............52

CONCLUSION ................................................................................56

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES[*]

## CASES

Page(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................53

*Bailey v. Shell Western E&P Inc.*,
    609 F.3d 710 (5th Cir. 2010) ...................................................30, 31

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................52

*Brown v. United States*,
    358 F.2d 1002 (Ct. Cl. 1966) ...................................................42, 43

*Central Pines Land Co. v. United States*,
    697 F.3d 1360 (Fed. Cir. 2012) ................................................42, 44

*Commercial Union Insurance. Co. v. United States*,
    999 F.2d 581 (D.C. Cir. 1993)........................................................43

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ........................................................55

*Goble v. Marsh*,
    684 F.2d 12 (D.C. Cir. 1982)........................................................43

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 130 S. Ct. 1396 (2010) ........................................45

*Her v. Regions Financial Corp.*,
    2008 WL 5381321 (W.D. Ark. Dec. 22, 2008)......................28, 38

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)........................................................................27

*In re Natural Gas Royalties Qui Tam Litigation*,
    566 F.3d 956 (10th Cir. 2009) ..............................19, 22, 26, 38, 39

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

*Keene Corp. v. United States*,
   508 U.S. 200 (1993)...............................................................41, 43

*Kennard v. Comstock Resources, Inc.*,
   363 F.3d 1039 (10th Cir. 2004) ..........................................51

*Kowal v. MCI Communications Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994)...............................................55

*Mathews v. Diaz*,
   426 U.S. 67 (1976)....................................................................44

*Miller v. Clinton*,
   687 F.3d 1332 (D.C. Cir. 2012).............................................35

*Morongo Band of Mission Indians v. California State Board of
   Equalization*, 858 F.2d 1376 (9th Cir. 1988)...................41

*NetCoalition v. SEC*,
   715 F.3d 342 (D.C. Cir. 2013)...............................................35

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989).............................................................43, 44

*Rollins v. Wackenhut Services*,
   703 F.3d 122  (D.C. Cir. 2012).............................................52

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
   131 S. Ct. 1885 (2011)............................................................46

*Shuler v. United States*,
   531 F.3d 930 (D.C. Cir. 2008)...............................................17

*Trout v. Secretary of the Navy*,
   540 F.3d 442 (D.C. Cir. 2008)...............................................43

*United States ex rel. Bane v. LifeCare Diagnostics*,
   2008 WL 4853599 (M.D. Fla. Nov. 10, 2008)...................28

*\*United States ex rel. Batiste v. SLM Corp.*,
   659 F.3d 1204 (D.C. Cir. 2011).................. 1, 3, 13, 17, 19, 20, 21, 22, 23, 25
                                                    26, 31, 32, 34, 36, 37, 39

*United States ex rel. Becker v. Tools & Metals, Inc.*,
    2009 WL 855651 (N.D. Tex. Mar. 31, 2009).................................................38

*United States ex rel. Bender v. North American Telecommunications*,
    499 F. App'x 44 (D.C. Cir. 2013) ...................................................55

*United States ex rel. Branch Consultants v. Allstate Insurance Co.*,
    560 F.3d 371 (5th Cir. 2009) ..........................................21, 31, 38

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Insurance
    Co.*, 782 F. Supp. 2d 248 (E.D. La. 2011).......................................40

*United States ex rel. Carter v. Halliburton Co.*,
    2011 WL 2118227 (E.D. Va. May 24, 2011)................................................28

*United States ex rel. Carter v. Halliburton Co.*,
    710 F.3d 171 (4th Cir. 2013) ........................................................28

*United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*,
    606 F.3d 361 (7th Cir. 2010) ........................................................39

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
    290 F.3d 1301 (11th Cir. 2002) ....................................................55

*United States ex rel. Davis v. District of Columbia*,
    413 F. App'x 308 (D.C. Cir. 2011) ...........................................17

*United States ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009).....................................................................55

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
    105 F.3d 675 (D.C. Cir. 1997).....................................................50

*United States ex rel. Folliard v. CDW Technology Services, Inc.*,
    722 F. Supp. 2d 37 (D.D.C. 2010).................................................25

*United States ex rel. Folliard v. Synnex Corp.*,
    798 F. Supp. 2d 66 (D.D.C. 2011)................................................25

*United States ex rel. Friedman v. Eckerd Corp.*,
    183 F. Supp. 2d 724 (E.D. Pa. 2001)...........................................38

*United States ex rel. Gagne v. City of Worcester*,
    565 F.3d 40 (1st Cir. 2009)...........................................................54

*United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*,
    390 F.3d 1276 (10th Cir. 2004) ..............................................31, 36

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
    318 F.3d 214 (D.C. Cir. 2003).....................................19, 25, 26, 38

*United States ex rel. Harris v. Alan Ritchey, Inc.*,
    2006 WL 3761339 (W.D. Wash. Dec. 20, 2006)..........................38

*United States ex rel. Heineman-Guta v. Guidant Corp.*,
    718 F.3d 28 (1st Cir. 2013).....................................................21, 28

*United States ex rel. Jamison v. McKesson Corp.*,
    649 F.3d 322 (5th Cir. 2011) .......................................................41

*United States ex rel. Joshi v. St. Luke's Hospital, Inc.*,
    441 F.3d 552 (8th Cir. 2006) .......................................................54

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital*,
    360 F.3d 220 (1st Cir. 2004)........................................................54

*United States ex rel. LaCorte v. SmithKline Beecham Clinical
Laboratories, Inc.*, 149 F.3d 227 (3d Cir. 1998) .........................21

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (9th Cir. 2001) ...............................................28, 37

*United States ex rel. Ortega v. Columbia Healthcare*,
    240 F. Supp. 2d 8 (D.D.C. 2003)............................................38, 44

*United States ex rel. Palmieri v. Alpharma, Inc.*,
    2013 WL 821965 (D. Md. Mar. 5, 2013) .....................................42

*United States ex rel. Pfeiffer v. Ela Medical, Inc.*,
    2010 WL 1380167 (D. Colo. Mar. 31, 2010)................................38

*United States ex rel. Powell v. American InterContinental University,
Inc.*, 2012 WL 2885356 (N.D. Ga. July 12, 2012)........................34

*United States ex rel. Russell v. Epic Healthcare Management Group*,
    193 F.3d 304 (5th Cir. 1999) ........................................................................55

*United States ex rel. Smith v. Yale-New Haven Hospital, Inc.*,
    411 F. Supp. 2d 64 (D. Conn. 2005), *aff'd on reconsideration*,
    2006 WL 387297 (D. Conn. 2006)...................................................27, 28, 32

*United States ex rel. Springfield Terminal Railway Co. v. Quinn*,
    14 F.3d 645 (D.C. Cir. 1994)..........................................................1, 46, 49, 50

*United States ex rel. Totten v. Bombardier Corp.*,
    286 F.3d 542 (D.C. Cir. 2002)...................................................................53

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004).............................................................17, 53

*United States ex rel. Wilson v. Emergency Medical Associates of
    Illinois, Inc.*, 2000 WL 34026709 (N.D. Ill. Sept. 24, 2000) .......................38

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ....................................................................54

*United States v. Kinder Morgan CO2 Co.*,
    2005 WL 3157998 (D. Colo. Nov. 21, 2005).........................................30, 31

*United States v. Science Applications International Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010)................................................................53

## STATUTES, LEGISLATIVE MATERIALS, AND RULES

28 U.S.C.
    §1291 ...................................................................................................5
    §1331 ...................................................................................................5
    §1345 ...................................................................................................5
    §1500 ............................................................................................35, 41
    §1653 ..................................................................................................43

31 U.S.C.
      §3730(b)(2) ...................................................................................32, 37
      §3730(b)(5) ....................................... 28, 33, 34, 35, 36, 40, 44
      §3730(e)(1) ...................................................................................28, 29
      §3730(e)(4)(A) (2009) ..............................................................45, 47, 49
      §3730(e)(4)(B) (2012) ..............................................................50

42 U.S.C. §300aa-11(a)(5)(B) ...................................................................35

Patient Protection and Affordable Care Act,
      Pub. L. No. 111-148, 124 Stat. 119 (2010) .......................................45, 46, 49

H.R. Rep. No. 99-660 (1986)...................................................................36

S. Rep. No. 99-345 (1986) ......................................................................29, 36

Fed. R. Civ. P.
      Rule 8(a) .......................................... 4, 6, 12, 15, 17, 52, 53, 55
      Rule 9(b) ............................. 4, 6, 12, 15, 17, 32, 38, 52, 53, 54, 55
      Rule 15 ...........................................................................47

D.C. Dist. Ct. R. 40.5(3) .......................................................................26

## OTHER AUTHORITIES

*Black's Law Dictionary* (9th ed. 2009)....................................................40

Boese, John T., *Civil False Claims and Qui Tam Actions*
      (4th ed. Supp. 2013)..............................................................33, 37

*Moore's Federal Practice* (3d ed. Supp. 2013) .......................................43

# GLOSSARY

**FAR**        Federal Acquisition Regulations

**FCA**        The False Claims Act, 31 U.S.C. §§3729 *et seq.*

**GSA**        General Services Administration

**PPACA**      The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010)

**SAC**        Plaintiff-Appellant Shea's Second Amended Complaint in this action

***Verizon I***     Shea's first *qui tam* suit against Verizon, *United States ex rel. Shea v. Verizon Communications Inc.*, No. 07-cv-111 (D.D.C. filed Jan. 17, 2007)

***Verizon II***    The action giving rise to this appeal, *United States ex rel. Shea v. Verizon Business Network Services, Inc.*, No. 09-cv-1050 (D.D.C. filed June 5, 2009)

## INTRODUCTION

The False Claims Act authorizes whistleblowers with inside information about fraud against the Government to bring suit on behalf of the United States and, if successful, to retain a share of the recovery.  The sizeable "cash bounties" available under the FCA can "supplement government enforcement," but they also create "the danger of parasitic exploitation of the public coffers."  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994).  The FCA's first-to-file and public-disclosure bars guard against such parasitic suits. The first-to-file bar provides that "[w]hen a person brings an [FCA action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  By precluding actions based on information already presented to the Government in an earlier case, the bar "'reject[s] suits which the government is capable of pursuing itself.'"  *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011). Similarly, the public-disclosure bar prevents a relator from bringing an action "based upon" information that was already "publicly disclos[ed]"—and thus available to the Government—unless the relator is the "original source" of the information.

This case exemplifies the sort of parasitic suit the first-to-file and public-disclosure bars were intended to prohibit.  In 2007, Plaintiff-Appellant Stephen

Shea filed *Verizon I*, an FCA action claiming that Verizon and its predecessor MCI had been billing the Government for taxes and surcharges in violation of two telecommunications contracts—knowledge Shea claimed to have gained in part from an MCI document he obtained in 2004. The United States intervened, and the parties negotiated a settlement (without an admission of liability). Shea received a bounty of nearly $20 million for his role.

After filing *Verizon I*, Shea speculated that Verizon might be billing the same or similar taxes and surcharges contrary to the terms of other government contracts. Although he did not acquire any new nonpublic information, he identified more Verizon contracts by searching the Internet. In most instances, he found nothing beyond the contract's name and number; in others, he also found excerpts of the contract or "mock-up" invoices. Relying on this skeletal public information, Shea filed this action, *Verizon II*, which alleges "on information and belief" that the Verizon defendants are improperly billing taxes and surcharges on twenty additional contracts. Shea freely admits that he has not reviewed any of the contracts in their entirety and that he does not know what charges are actually being billed, much less whether any of them actually violate the applicable contract. The Government has not intervened in this case.

The district court (Kessler, J.) correctly held that this suit is foreclosed by the first-to-file bar. Shea's complaint in *Verizon I* was more than sufficient to put

- 2 -

the Government on notice of his allegations regarding Verizon's billing practices. This suit merely seeks to extend the same theory of fraud to additional contracts that he speculates *might* support a similar claim.  Because Shea's claims involve no new revelation, and, indeed, are precisely the sort of claims "'which the government is capable of pursuing itself,'" *Batiste*, 659 F.3d at 1208, they cannot proceed.  Moreover, contrary to Shea's arguments on appeal, he cannot avoid the first-to-file bar on the ground that he was the relator in both *Verizon I* and *Verizon II* or because *Verizon I* is no longer pending.  The statute clearly states that once a relator files suit, "*no person* other than the Government" may bring a related action.  It makes no exception for new actions filed by the original relator. The text, purpose, and history of the first-to-file bar also make clear that it prohibits follow-on suits even after the original action has been resolved.

Even if there were some uncertainty about the district court's application of the first-to-file bar, this Court should still affirm the dismissal of Shea's suit on either of two alternative grounds:

*First*, Shea's action is prohibited by the public-disclosure bar.  Shea has admitted that *all* of his information about the contracts and charges at issue came from the Internet.  That concession is fatal:  Shea has not disputed that information found online is "publicly disclos[ed]" for purposes of the bar, and he plainly

- 3 -

cannot qualify as an "original source" of information he learned from public websites.

*Second*, Shea cannot satisfy the ordinary pleading requirements of Federal Rule of Civil Procedure 8(a), let alone Rule 9(b)'s heightened standards. His complaint does not identify a single specific surcharge that was imposed without authorization, much less the circumstances of the allegedly fraudulent charges. Instead, as Shea acknowledged, he hopes to fill in those details through discovery. Rule 9(b) prohibits such fishing expeditions, which are particularly inappropriate in FCA suits. To allow a relator to bring suit in the hopes of finding a billing error through burdensome discovery (often at a cost of millions to the defendant) would impermissibly transform the role of relator from "whistleblower" to "auditor."

For all of these reasons, this Court should affirm the dismissal of Shea's suit. Shea's role under the FCA was complete when *Verizon I* settled and he obtained a generous reward for notifying the Government of Verizon's allegedly improper billing. The decision whether to pursue a related action like this one is for the Government alone, and Shea cannot step into the Government's shoes and secure another *qui tam* bounty without identifying any new theory of fraud or offering any new nonpublic information.

## JURISDICTIONAL STATEMENT

Shea attempted to invoke the district court's jurisdiction under 28 U.S.C. §§1331 & 1345 and 31 U.S.C. §3732(a). JA18-19, 56. The district court correctly concluded it lacked jurisdiction because of the first-to-file bar, 31 U.S.C. §3730(b)(5). JA321-322. The district court also lacked jurisdiction because of the public-disclosure bar, 31 U.S.C. §3730(e)(4). Absent these statutory bars, jurisdiction would have been proper under §1331 and §3732(a).

The district court entered a final judgment on December 27, 2012. JA324. Shea filed a timely amended notice of appeal on January 11, 2013. JA11. This Court has jurisdiction to review the dismissal of Shea's suit under 28 U.S.C. §1291, but lacks jurisdiction over the merits for the same reasons jurisdiction was absent in the district court.

## STATEMENT OF ISSUES

1.      Whether the FCA's first-to-file bar, 31 U.S.C. §3730(b)(5):

  (a)      precludes an action that merely extends the same theory of fraud alleged in an earlier FCA action to additional government contracts;

  (b)      applies where the related actions were filed by the same person;

  (c)      continues to preclude related actions after the first-filed suit has been resolved.

2.     Whether an FCA action claiming that a contractor has improperly billed the Government is barred by the Act's public-disclosure bar, §3730(e)(4), when the relator concedes that all of his information about the contracts and bills at issue came from public websites.

3.     Whether an FCA complaint satisfies Rules 8(a) and 9(b) when it fails to identify with particularity—among other things—any allegedly unauthorized charges or any specific contractual provision that was allegedly violated.

## RELEVANT STATUTES

The relevant statutes and rules are in an addendum to this brief.

## STATEMENT OF FACTS

### A.     Shea Files *Verizon I*

Shea filed his first *qui tam* action against Verizon in January 2007.  JA138-157.  The complaint in *Verizon I* asserted that it "concern[ed] the knowing submission to the United States of certain prohibited surcharges under contracts to provide telecommunications services" to the General Services Administration (GSA).  JA139.  The two contracts directly addressed in the complaint were known as the FTS2001 Contract and the FTS2001 Bridge Contract.  *Id.*

The complaint alleged that, based on his experience as "a private telecommunications consultant to Fortune 100 companies … Shea became aware of the practice of [Verizon's predecessor] MCI billing corporate clients not only

- 6 -

for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes)." JA141. Shea never worked for MCI, Verizon, or the Federal Government, and he had no direct involvement in any federal telecommunications contracts. JA80-81. But he alleged that "[o]n or about August 13, 2004, [he] received an MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for'" under the two contracts at issue in *Verizon I*. JA152. Shea asserted that "MCI appear[ed] to have been invoicing the United States in the same way it invoiced many of its commercial clients notwithstanding the terms of the FTS2001 Contract and governing FAR regulations" and that "MCI used the same billing platform that it used for enterprise [or corporate] customers to bill the United States without modifying its systems to reflect the terms of the FTS2001 Contract." JA153. Shea claimed that Verizon continued these practices after the two companies merged in 2006. JA152, 154.

The United States intervened in Shea's suit, and in February 2011 the parties settled the case without any admission of liability. JA306. Shea received approximately $18.9 million for his role.[1]

---

[1]     *See* Judgment, *Verizon I*, No. 07-cv-111 (D.D.C. May 1, 2012) (Doc. 77).

### B.    Shea Files *Verizon II*

Shea received no new inside information about Verizon's contracts or alleged billing practices after filing *Verizon I*.  But by searching the Internet, he found the names and numbers of additional Verizon contracts, as well as excerpts from a few of the contracts and certain limited billing information, such as "mock-up" invoices used for training purposes.  JA81-82, 85, 88.  Although *Verizon I* remained pending, Shea did not seek to amend his complaint to add allegations relating to these additional contracts.  Instead, he filed a new complaint under seal on June 5, 2009.  *See* JA12-31.[2]

Shea designated *Verizon II* as "related" to *Verizon I* under the district court's rules.  JA33.  And beginning with its description of the suit, the 2009 complaint was strikingly similar to his 2007 filing.  In language lifted nearly verbatim from the earlier complaint, it alleged that Verizon "knowingly submits claims to the United States for payment of illegal surcharges under contracts to provide telecommunication services."  JA12-13; *cf.* JA139.  Like the 2007 complaint, the 2009 complaint claimed that Shea discovered the alleged fraud "through his extensive work as a private telecommunications consultant to Fortune 100 companies."  JA17; *cf.* JA141.  The 2009 complaint also repeated the 2007 allegation that Shea learned that MCI and Verizon were "billing corporate clients

---

[2]    Verizon only learned that Shea had filed this action very shortly before the *Verizon I* settlement was to be finalized in February 2011.

not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes)."  JA17-18; *cf.* JA141. Once again, the 2009 complaint claimed that "[o]n or about August 13, 2004, Relator Shea received an MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for.'"  JA22; *cf.* JA152. And the 2009 complaint again alleged that "Verizon is invoicing the United States in the same way that it invoices many of its business customers notwithstanding the governing FARs or applicable contracts," and that "Verizon uses the same billing systems that it uses for its business customers to bill the United States without modifying these systems to reflect the terms of the contracts with the United States or the FARs."  JA28; *see* JA22-23; *cf.* JA152-154.

Shea made no attempt to suggest that *Verizon II* raised a new theory of fraud.  To the contrary, he framed it as a continuation of *Verizon I*, alleging that "Verizon's pattern and practice of submitting false claims extends beyond" the two contracts directly at issue in that case.  JA15.  Shea asserted that the fraud alleged in *Verizon II* applied to "multiple contracts including, but not limited to" two additional contracts administered by the GSA and other, unspecified contracts with other federal agencies.  *Id.*

In November 2011, the United States informed the district court that it was "not intervening at this time" in *Verizon II*. JA34-35. The suit was unsealed on March 29, 2012. JA4.

### C.    Shea Amends His Complaint In *Verizon II*

On July 26, 2012, Shea filed a First Amended Complaint in *Verizon II*. JA5. On September 12, 2012, he filed a Second Amended Complaint (SAC) that was substantively identical, but substituted three Verizon operating subsidiaries as defendants. JA52-71. Like the 2009 complaint, the SAC acknowledges that *Verizon II* is "related" to *Verizon I*, JA55, and extends the allegations from that suit to additional contracts and Verizon affiliates. As in the prior complaints, Shea alleges that he discovered the purported fraud while "consulting with large commercial telecommunications customers." JA54; *cf*. JA17-18 (2009); JA141 (2007). The SAC claims that as a consultant, Shea learned that MCI and Verizon "had a custom and practice of charging" certain taxes and surcharges to its commercial clients. JA54; *cf*. JA17-18 (2009); JA141 (2007). The SAC then alleges that "MCI/Verizon overcharged the United States, just like its commercial customers." JA54; *see* JA59; *cf*. JA18 (2009); JA141-142 (2007).

The SAC—like the prior complaints—traces Shea's purported insider knowledge to his 2004 receipt of the same "MCI document indicating that the company was charging the Government for regulatory fee surcharges, and various

state taxes." JA54; *cf.* JA22-23 (2009); JA152 (2007). The SAC further alleges—again like the prior complaints, but this time referencing an unnamed "former Verizon employee"—that "Verizon did not have a separate billing system for federal customers and commercial customers." JA59; *cf.* JA28 (2009); JA153-154 (2007). The SAC then asserts that Shea's allegations apply not only to the contracts directly at issue in *Verizon I*, but also to twenty additional contracts between Verizon and several federal agencies. In his deposition, however, Shea acknowledged that the only material information he has about these contracts or the relevant Verizon billing practices is publicly available on "various websites." JA81-82; *see also, e.g.*, JA82 ("off the internet"); JA86 ("from the internet"; "on the internet"); JA88 ("you just stick [the contract numbers] in Google"); JA88-92 ("online" seventeen times); JA101 ("online"); JA102 ("from the web"); JA103 ("on the internet"; "online"); JA104 ("[o]n the internet"; "on Verizon's website"); JA106, 107, 110, 112, 113 ("online").

The SAC provides no details to support Shea's general allegation that Verizon committed fraud with respect to the listed contracts. It does not contain specific allegations that any particular contract barred Verizon from imposing any particular surcharge. And although Shea himself acknowledged that "different contracts have different surcharge provisions," JA87, the SAC provides no detail at all about seventeen of the twenty contracts, merely identifying them by name and

number.  Indeed, Shea conceded in his deposition that he does not "have a hundred percent of *any* [of the] contracts," JA107 (emphasis added); instead, he has reviewed only "bits and pieces" of some of the contracts that he obtained on the Internet, JA83.  *See also, e.g.*, JA86 ("chunks" of a contract); JA89, 101 (same); JA102 (Shea does not "have a copy of that contract"); JA105 ("I have not read every single one of these contracts in their entirety because I don't have them.").

Nor does the SAC provide any specific allegations about Verizon's allegedly improper billing.  It does not identify the purportedly false claims, much less their amounts, the circumstances of their submission, or the people involved in submitting them.  In fact, Shea acknowledged at his deposition that there is much he does not know at this stage and that he hopes to rely on discovery to construct his case.  *See, e.g.*, JA124 ("I don't know what I don't know.  But … when we see the documents and the invoicing we're going to know."); *see also* JA83 ("I don't know if I've reviewed the actual contract.  I think that's the—one of the documents that we've asked for, for you guys to give us to see."); JA85 ("I haven't read and seen every—every single full whole contract.  And I'm—I'm anticipating to see that."); JA103 ("I'm looking forward to reading them.").

### D.     The District Court Dismisses Shea's Suit

Verizon moved to dismiss Shea's suit based on the first-to-file bar, the public-disclosure bar, and Rules 8(a) and 9(b).  The United States did not intervene

in the case and took no position on the viability of Shea's claims, requesting only that any dismissal "be without prejudice to the United States."  JA302.

The district court dismissed Shea's suit under the first-to-file bar.  JA303-322.  The court first rejected Shea's claim that the bar is inapplicable when the same relator files multiple related suits, noting that "[t]he plain language of §3730(b)(5) is clear:  Once 'a person brings an action under this subsection, *no person other than the Government* may intervene or bring a related action based on the facts underlying the pending action.'"  JA314.  By its terms, this prohibition applies "'equally to the original relator as any other person.'"  *Id.*

The district court also rejected Shea's contention that the first-to-file bar no longer precludes this suit because *Verizon I* was not "pending" when Shea filed the SAC.  JA316.  "Turning again to the plain language of the statute," the court explained that "it is clear that the first-to-file bar refers specifically to jurisdictional facts that exist when an 'action' is brought," not when the complaint is later amended.  *Id.*

Finally, the district court held that *Verizon I* and *Verizon II* are "related" under the first-to-file bar.  It noted that §3730(b)(5) prohibits subsequent actions "'alleging *the same material elements of fraud*'" as an earlier suit, even if they "'incorporate somewhat different details.'"  JA318.  Quoting *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204 (D.C. Cir. 2011), the court explained that the

question is whether the later-filed complaint "'alleges a fraudulent scheme the government already would be equipped to investigate based on the [earlier-filed] [c]omplaint.'" JA319 (alterations in original).

Applying this test, the court held that the manifest similarities described above "clearly demonstrate[] that the allegations in *Verizon II* are based on the same material facts alleged in *Verizon I*." JA319. The court also found "no merit" in Shea's assertion that the two lawsuits cannot be related because they involve different contracts and agencies. JA320. Again quoting *Batiste*, it concluded that the complaint in *Verizon I* "'suffices to put the U.S. government on notice' as to Verizon's allegedly fraudulent billing practices" with regard to its government contracts in general, including those at issue in *Verizon II*. JA321.

Shea had argued that any dismissal under the first-to-file bar should be without prejudice because *Verizon I* was no longer "pending" and thus—Shea asserted—he should be free to "re-file his complaint the next day" if this case were dismissed. Doc. 54 at 44. The district court's order, however, specified that the dismissal was "without prejudice as to the United States" and omitted any such limitation as to Shea. JA321-322. Shea filed a motion to clarify or amend the order to provide that the dismissal was without prejudice. JA9; *see* Doc. 60-1. The district court denied the motion and entered a judgment expressly dismissing the case "with prejudice" as to Shea. JA323-324.

Because the court concluded that the first-to-file bar foreclosed this action, it did not address whether dismissal was also appropriate under the public-disclosure bar or Rules 8(a) and 9(b).  JA321.

## SUMMARY OF ARGUMENT

The district court correctly dismissed this action with prejudice under the first-to-file bar.  Shea's contrary arguments are foreclosed by that provision's text, purpose, and history, and by this Court's precedent.

This Court has held that two actions are "related" under §3730(b)(5) if the first complaint put the Government on notice of the fraud alleged in the second action.  Here, Shea asserts that the same improper billing scheme alleged in *Verizon I* extends to additional contracts.  This action cannot proceed because *Verizon I* already provided the Government all that it needed to investigate and discover any improper billing on those additional contracts.  *See infra* Part I.A.

Moreover, contrary to Shea's claim, there is no exception to the first-to-file bar when the same person files multiple related suits.  The statute is unambiguous and exception-free:  Once an FCA suit is filed, "no person other than the Government"—including the original relator—may bring a related action.  *See infra* Part I.B.

It is also irrelevant that *Verizon I* has now been resolved.  Shea assumes without analyzing the statutory text that §3730(b)(5) ceases to bar follow-on

actions once the original suit is no longer pending.  But that is not what the statute says:  Congress used the word "pending" *only* to describe the first-filed action, not to limit the period during which the bar applies.  This reading is confirmed both by the legislative history, which makes no mention of a temporal limitation on the first-to-file bar, and by the bar's central purpose of rejecting suits that the Government is capable of pursuing itself.  When the Government has been put on notice by an earlier-filed suit, a related action adds nothing—and is thus precluded—regardless of whether the first-filed suit has been finally resolved.  *See infra* Part I.C.1.  In any event, even if Shea were correct that a related suit may be filed once the first-filed action is no longer pending, *this* suit would still have to be dismissed.  The fact that Shea amended his complaint after *Verizon I* was settled is irrelevant, because jurisdiction is measured at the time a relator first "bring[s]" an action by filing suit.  *See infra* Part I.C.2.

The dismissal of Shea's suit with prejudice is also supported by two alternative grounds:

*First*, this is an unusually clear case for the application of the public-disclosure bar because Shea himself has conceded that *all* of his relevant information about the contracts and billing practices at issue was publicly known because it came from the Internet.  Shea does not dispute that information found

online qualifies as "publicly disclos[ed]," and he obviously cannot be the "original source" of information he learned using Google.  *See infra* Part II.

*Second*, Shea cannot satisfy Rules 8(a) and 9(b).  Shea has failed to allege with particularity *any* of the elements of his fraud claim, including which specific surcharges were improper and which contractual provisions they purportedly violated.  Instead, Shea hopes to fill in these essential details by using discovery to conduct a burdensome audit of Verizon's billing.  But Rules 8(a) and 9(b) do not permit this sort of fishing expedition.  *See infra* Part III.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the dismissal of a complaint for lack of jurisdiction."  *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011) (first-to-file bar); *see United States ex rel. Davis v. District of Columbia*, 413 F. App'x 308, 309 (D.C. Cir. 2011) (public-disclosure bar).  As the plaintiff, Shea "bears the burden of demonstrating subject matter jurisdiction."  *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008).  This Court also reviews *de novo* the sufficiency of a complaint under Rules 8(a) and 9(b).  *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

## ARGUMENT

I.  **THE DISTRICT COURT CORRECTLY DISMISSED SHEA'S SUIT WITH PREJUDICE UNDER THE FIRST-TO-FILE BAR**

### A.    This Suit Is "Related" To *Verizon I*

As the district court explained, this case is "related" to *Verizon I*—and thus precluded by the first-to-file bar—because a comparison of *Verizon I* and Shea's complaints here "clearly demonstrates" that the two cases are "based on the same material facts." JA319. Indeed, Shea has simply taken the theory of fraud asserted in *Verizon I* and speculated that it might apply to additional contracts, none of which he has seen in full. This action is thus a paradigmatic example of a successive suit that brings no new material information to the Government's attention and therefore provides no basis for a second *qui tam* bounty.

Although Shea himself has repeatedly characterized *Verizon II* as "related" to *Verizon I*, JA13, 33, 48, 55, he now insists (at 24-34) that the cases are not "related" for purposes of the first-to-file bar. He devotes most of his effort to arguing that the district court erroneously applied a "notice-based standard." But as the district court explained, that is precisely the standard this Court adopted in *Batiste*. And in any event, the two suits at issue here are "related" under any reasonable interpretation of §3730(b)(5).

- 18 -

### 1.    The district court correctly applied a "notice-based" standard to the first-to-file bar

"[T]wo complaints need not allege identical facts for the first-filed complaint to bar the later-filed complaint."  *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011).  Instead, the statute bars any *qui tam* action "incorporating the same material elements of fraud as an action filed earlier," even if the two suits "'incorporate somewhat different details.'"  *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003); *accord Batiste*, 659 F.3d at 1208.  In *Batiste*, this Court explained that the "same material elements" standard must be applied in light of the purpose of the first-to-file bar, which seeks to promote the "'twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to pursue on its own.'"  659 F.3d at 1208.  *Batiste* thus held that two FCA actions contain the "same material elements" if the earlier complaint "suffice[d] to put the U.S. government on notice" of the fraud alleged in the second action.  *Id.* at 1209.

Shea admits (at 28 n.34) that this language "suggests that this Court adopted a notice-based standard" for the first-to-file bar.  Yet he nonetheless maintains that *Batiste* did not actually adopt that approach and argues that this Court should instead follow the Tenth Circuit's decision in *In re Natural Gas Royalties Qui Tam Litigation*, 566 F.3d 956 (10th Cir. 2009), which criticized reliance on the scope of

the notice provided by the first action.  But Shea's reading of *Batiste* is untenable.

This Court could not have been clearer in holding that the governing "same

material elements" test requires an inquiry into the notice provided by the first

complaint.  That is how the Court framed its inquiry at the outset:

> [W]e must consider whether [the two complaints] allege the "same
> material elements of fraud."  *In other words*, we must determine
> whether the [later-filed] Batiste complaint *alleges a fraudulent scheme
> the government already would be equipped to investigate* based on the
> [earlier-filed] Zahara complaint.

659 F.3d at 1209 (emphases added).  And it is also how the Court stated its

conclusion:

> Under the … material facts test, these complaints allege essentially
> the same corporation-wide scheme.  The Zahara Complaint *would
> suffice to equip the government to investigate* SLM's allegedly
> fraudulent forbearance practices nationwide.  Batiste's additional
> details would not give rise to a different investigation or recovery.

*Id.* at 1209-1210 (emphasis added).

Shea seizes (at 28 n.34) on the single sentence stating that the additional

details in the later-filed complaint "would not give rise to a different investigation

or recovery."  According to Shea, this statement would be "irrelevant" under a

notice-based approach.  But asking whether the subsequent complaint would lead

to "a different investigation or recovery" simply helps to determine whether the

Government was already on notice of the alleged misconduct.  The question is not

whether the second complaint seeks a recovery different from that sought in the

- 20 -

first complaint, but whether the second complaint would give rise to a recovery different from that which would have resulted from a *Government investigation* prompted by the first complaint.  In *Batiste*, for example, the first complaint alleged one form of a student-loan fraud in the defendant's New Jersey offices, while the second complaint sought to recover for a different form of student-loan fraud allegedly committed in its Nevada offices.  *See* 659 F.3d at 1209.  The complaints themselves thus sought different recoveries, but the Court still concluded that the bar applied because "the allegations of the first complaint give the government grounds to investigate all that is in the second."  *Id.*

As *Batiste* explained, this notice-based approach is consistent with the statutory purpose of "rejecting suits which the government is capable of pursuing itself."  659 F.3d at 1209.  Accordingly, other courts of appeals have also looked to the scope of the notice provided by the first suit to determine whether two cases are related.  *See, e.g.*, *United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 34-37 (1st Cir. 2013) (citing *Batiste*); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378, 380 (5th Cir. 2009); *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir.

1998).  To the extent the Tenth Circuit departed from this approach in *Natural Gas Royalties*, its decision does not control here.[3]

Implicitly conceding (at 32) that he himself is not "a Verizon insider, with direct knowledge that Verizon was illegally charging the United States," Shea argues that a notice-based standard should be rejected because it would bar even a hypothetical suit brought by such a genuine whistleblower.  But by definition, a notice-based standard precludes a subsequent suit only when "the allegations of the first complaint give the government grounds to investigate all that is in the second."  *Batiste*, 659 F.3d at 1209.  If a suit by an actual "insider" alleged a genuinely new fraud, the first-to-file bar would pose no obstacle.  And if, in contrast, the Government had notice of the claimed fraud and was already able to pursue it, there would be no reason to offer another *qui tam* bounty, regardless of the source of the subsequent relator's knowledge.

## 2. *Verizon I* and *Verizon II* are related under any standard

In any event, Shea's complaints in *Verizon I* and *Verizon II* are "related" under any plausible understanding of the "same material elements" test.  The

---

[3]     Indeed, *Batiste* itself rejected an argument based on *Natural Gas Royalties*. In *Batiste*, the United States filed an amicus brief relying on the Tenth Circuit's decision to argue that the district court had erred by "adopt[ing]" a "notice-based standard."  U.S. Br. at 20-21, *Batiste*, 659 F.3d 1204 (No. 10-7140), 2011 WL 2095674.  Yet this Court declined to follow *Natural Gas Royalties*, instead affirming the decision below and adopting the same notice-based standard used by the district court.

required "side-by-side comparison" of the two complaints, *Batiste*, 659 F.3d at

1209, demonstrates that the material elements of the alleged fraud, as well as the

alleged facts supporting those elements, are strikingly similar in all relevant

respects:

| Allegation | *Verizon I* | *Verizon II* (SAC) |
| --- | --- | --- |
| *Type of Fraud* | "This action concerns the knowing submission to the United States of certain prohibited surcharges." JA139. | "This lawsuit is based on a scheme by Defendants … to defraud the United States by knowingly billing the government for non-allowable surcharges." JA52-53. |
| *Specific Allegations* | Verizon improperly submitted surcharges "that reflected [its] cost of doing business." JA151-152. | Verizon "billed the government for Non-Allowable Tax-Like Charges" and concealed that such "charges are imposed not on the United States, but on the carrier, as a cost of doing business." JA59. |
| *Legal Arguments* | Verizon was prohibited from charging for the surcharges under FAR 52.229-04 and the provisions of the contracts. JA139, 143. | Verizon was prohibited from charging for the surcharges under FAR 52.229-04 and the provisions of the contracts. JA58, 61. |
| *Circum-stances of Discovery* | Shea discovered fraud "through his extensive work as a private telecommunications consultant" and "became aware of the practice of MCI billing corporate clients … for surcharges." JA141. | Shea discovered fraud "[b]ased on his experience consulting with large commercial telecommunications customers" and learned "that most telecommunication carriers, including [MCI/Verizon], had a custom and practice of charging [surcharges.]" JA54. |

- 23 -

| Allegation | *Verizon I* | *Verizon II* (SAC) |
|---|---|---|
| *Specific Source of Knowledge* | "On or about August 13, 2004, Relator Shea received an MCI document that purported to show 'the taxes and surcharges that the Federal Government is responsible for.'"  JA152. | "In 2004, Shea received an MCI document indicating that the company was charging the government for regulatory fee surcharges, and various state taxes, including utility taxes, ad valorem/property taxes, and business, occupational, and franchise taxes."  JA54. |
| *Allegations About Verizon's General Billing Practices* | Verizon "use[d] the same billing platform that it uses for its business customers to bill the United States without modifying its systems." JA153-154. | "A former Verizon employee … confirmed that Verizon did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers."  JA59. |

Whether or not a notice-based standard applies, these two actions plainly contain the same material elements.  Indeed, Shea himself represented that *Verizon I* was a "related" case when he filed his 2009 complaint.  JA33.  Under the only relevant provisions of the local rule governing related cases, this was a certification that the two cases "involve common issues of fact" or "grow out of the same event or transaction."  D.C. Dist. Ct. R. 40.5(3).  And Shea's two actions are much more closely "related" than the actions deemed related in *Batiste*.  That case involved two *qui tam* actions against federal student loan servicer Sallie Mae and held that the second case was barred even though the first case focused on "the

- 24 -

fabrication of oral forbearance requests" in Nevada while the second "focused on the offering of forbearances to unqualified borrowers" in New Jersey. 659 F.3d at 1209. Similarly, Shea's actions are at least as closely related as the ones in *Hampton*, which barred a subsequent suit naming different defendants and alleging that the fraud at issue occurred independently at different subsidiaries, including subsidiaries not at issue in the prior complaint. *See* 318 F.3d at 218-219.

Shea argues (at 26-27) that his suits are not "related" because *Verizon I* involved two contracts with the GSA while this action involves twenty different contracts, some of which involve other federal agencies. But as three district court judges in this Circuit have now concluded, a relator cannot avoid the first-to-file bar by simply alleging that a similar fraud extends to additional contracts with different agencies. *See* JA320; *United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 73 (D.D.C. 2011); *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 37, 41 (D.D.C. 2010). The FCA prohibits frauds against *the United States*, and §3730(a) provides that "[t]he Attorney General diligently shall investigate" any violation of its terms. This requirement "suggests that the primary function of a *qui tam* complaint is to notify the *investigating* agency, i.e., the Department of Justice," of the alleged fraud. *CDW Tech.*, 722 F. Supp. 2d at 42. Because the Department has both the authority and the duty to "diligently … investigate" fraud against any federal agency, an allegation that the

same fraudulent scheme by the same corporate family extends to additional contracts involving other agencies is not a "material" difference.

Application of the first-to-file bar here is also consistent with *Natural Gas Royalties*, the out-of-circuit case on which Shea chiefly relies. The Tenth Circuit there concluded that a complaint alleging misconduct against some defendants did not bar a subsequent complaint alleging similar misconduct against other, unrelated defendants. *See* 566 F.3d at 962 ("The defendant's identity is a material element of the fraud claim."). But the court acknowledged that a different rule is likely appropriate where, as in this case and *Hampton*, the two suits involve different "members of the same corporate family." *Id.* at 962.

Under this Court's notice-based approach, the outcome is even clearer. Shea's original complaint was unquestionably sufficient to put the Government on notice of the fraud alleged here: Shea claimed that Verizon had a "practice" of billing its commercial clients for certain taxes and surcharges, JA141-142, and asserted that it used the same system to bill the Federal Government, JA150-152. As in *Batiste*, "[i]f the government investigated the facts alleged in [*Verizon I*] … , it would discover [the fraud alleged here], if such fraud existed." 659 F.3d at 1209. Shea himself conceded as much when he sought an increased share of the *Verizon I* settlement, arguing that his first suit gave the Government "increased knowledge about the carriers' practices of imposing surcharges" and would put the GSA in "a

- 26 -

better position to enforce its contract[s], including [a new contract not at issue in *Verizon I*], going forward."  JA234; *see also* JA216.  And even now, Shea appears to recognize (at 34) that his allegations in the first case *should* have led the Government to "examine[] every telecommunications contract with MCI/Verizon to determine if Verizon was charging illegal surcharges under those contracts."  Thus, under any reading of the "same material elements" test, this action is "related" to *Verizon I*.

### B.    The First-To-File Bar Applies To Actions Brought By The Same Relator

Shea seeks to escape the first-to-file bar by asserting (at 17-24) that it does not apply "to subsequent related actions filed by the same relator."  But §3730(b)(5) unambiguously provides that "[w]hen a person brings an action under this subsection, *no person other than the Government* may intervene or bring a related action."  (Emphasis added.)  The original relator is unquestionably a "person other than the government" and is therefore barred from bringing related actions.  Even Shea acknowledges (at 18) that this result is compelled by a "literal interpretation" of the text.  That should end the matter.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

The courts that have squarely considered whether §3730(b)(5) prohibits subsequent related actions by the same relator have held that it does, noting that "the statutory language is unambiguous."  *United States ex rel. Smith v. Yale-New*

*Haven Hospital, Inc.*, 411 F. Supp. 2d 64, 75 (D. Conn. 2005), *aff'd on reconsideration*, 2006 WL 387297 (D. Conn. 2006).[4]  More generally, courts have held that §3730(b)(5) is "exception-free."  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001); *accord, e.g.*, *Heineman-Guta*, 718 F.3d at 35 ("contains no exceptions"); *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013) ("an absolute, unambiguous exception-free rule").

Shea argues (at 17-18) that applying the plain meaning of the words "no person other than the government" "makes no sense" because the first-to-file bar prohibits both the filing of a related action and intervention in the original action, and relators obviously "cannot intervene in their own suits."  But there is nothing unusual—let alone nonsensical—about a literal reading of §3730(b)(5).  It is of course true that the original relator could not intervene in his own action even in the absence of the first-to-file bar, just as other potential relators might be precluded from intervening or bringing related actions by independent legal rules. *Cf.* 31 U.S.C. §3730(e)(1) (barring certain FCA suits "by a former or present member of the armed forces").  But that is no reason to ignore the plain language

---

[4]     *See also United States ex rel. Carter v. Halliburton Co.*, 2011 WL 2118227, at \*4 (E.D. Va. May 24, 2011); *United States ex rel. Bane v. LifeCare Diagnostics*, 2008 WL 4853599, at \*4 (M.D. Fla. Nov. 10, 2008); *cf. Her v. Regions Fin. Corp.*, 2008 WL 5381321 (W.D. Ark. Dec. 22, 2008) (applying §3730(b)(5) to dismiss an action brought by two of the relators who had filed the prior action).

of the statute, which makes clear that "no person" may intervene *or* bring a related action.  As this case illustrates, application of this bar to original relators is not superfluous:  It prohibits them from filing successive suits.  And the fact that some prohibited actions are doubly foreclosed is no reason to read the statute to mean something other than what it says.  Indeed, under Shea's logic, a sign outside a hospital operating room stating that "no person may enter without covering their hair and face" would allow a bald man to enter without a facemask, because he has no hair to cover.

Aside from this strained textual argument, Shea appeals (at 19-24) to legislative history, out-of-circuit precedent, and "the FCA's goals."  None of them supports his position.

*First*, Shea is simply wrong to claim (at 19) that the Senate Report accompanying the first-to-file bar endorses his reading.  The Report explains that:

> [T]he Committee wishes to clarify in the statute that private enforcement under the civil False Claims Act is not meant to produce class actions *or multiple separate suits based on identical facts and circumstances*.

S. Rep. No. 99-345, at 25 (1986) (emphasis added).  The italicized language—which is the portion directed at the prohibition on "related actions" at issue here—makes clear that Congress meant to prevent "multiple separate suits based on identical facts and circumstances."  That is exactly what Shea seeks to permit: "multiple separate suits" filed by the same relator.

- 29 -

*Second*, Shea asserts (at 19-22) that the district court's decision contradicts *Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710 (5th Cir. 2010). To the extent *Bailey* can be read to disregard the plain language of the statute, this Court should decline to follow its error. Moreover, *Bailey* provides no support for Shea's position because—as the district court explained—the Fifth Circuit rendered a narrow decision based on the highly unusual facts of that case. In *Bailey*, the relators brought *qui tam* claims in federal court in Colorado and then filed "virtual[ly] identi[cal]" counterclaims in long-running and earlier-filed Texas state litigation in order to remove that litigation to federal court. *United States v. Kinder Morgan CO2 Co.*, 2005 WL 3157998, at *1-3 (D. Colo. Nov. 21, 2005); *see Bailey*, 609 F.3d at 717-718. The Colorado district court transferred its case to the district court in Texas over the relators' protest that the Texas court lacked jurisdiction under the first-to-file bar. The Texas court consolidated the cases and entered judgment for the defendant. On appeal, the Fifth Circuit rejected the relators' argument that the case should have proceeded in Colorado because the Texas court lacked jurisdiction to hear the *qui tam* counterclaims that *the relators themselves* had filed and used as a basis for removal. 609 F.3d at 720.

The issue in *Bailey* thus was not whether a single person may litigate serial *related* FCA claims, as Shea seeks to do here. Instead, it was whether the first-to-file bar determines the venue in which a consolidated action should be litigated

when the same person brings *exactly the same* claim in multiple jurisdictions.  The

Fifth Circuit believed that allowing the first-to-file bar to supersede the principles

of judicial economy that ordinarily govern in such situations would have permitted

"opportunistic" "forum shopping."  609 F.3d at 721 n.3.  *Bailey* thus did *not*

authorize a relator to prosecute multiple related actions.  It permitted only a single

consolidated action and articulated a narrow rule based on the facts before it,

stating that the first-to-file bar "does not apply when the same plaintiff … files *the*

*same* claim in a different jurisdiction."  *Id.* at 720 (emphasis added).[5]

    *Third*, Shea claims (at 22-24) that precluding successive claims by the same

relator does not further the purposes of the first-to-file bar.  But he fails to mention

the purpose this Court has recognized as the provision's central objective:

"'rejecting suits which the government is capable of pursuing itself.'"  *Batiste*, 659

F.3d at 1208.  That goal requires barring any follow-on suit, whether it is brought

by the same or a different relator.  If the second suit qualifies as "related," then by

definition the Government is already on notice of the claimed fraud and there is no

---

[5]    Shea relies (at 21-22) on *Kinder Morgan*, the Colorado district court
decision transferring the claims at issue in *Bailey*.  But that case involved exactly
the same unusual facts as *Bailey*.  He also quotes statements by the Fifth and Tenth
Circuits that the first-to-file bar applies to claims filed by "other private relators,"
*United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279
(10th Cir. 2004), or "by another," *Branch Consultants*, 560 F.3d at 376.  But this
language is, at best, unconsidered dicta—neither case involved multiple suits filed
by the same relator or purported to address the question at issue here.

justification for awarding another *qui tam* bounty, regardless of the relator's identity.

Shea focuses instead on the first-to-file bar's secondary goals of encouraging whistleblowers to race to the courthouse and eliminating competing suits that could reduce the original relator's award.  But Shea does not identify any way in which a plain reading of the first-to-file bar hinders these objectives.  He also ignores the fundamental bargain struck by the FCA:  In exchange for a share of any recovery, the relator must hand over to the Government—as soon as he files his complaint— "substantially *all* material evidence and information" in his possession.  31 U.S.C. §3730(b)(2) (emphasis added).  It is only fair to enforce that bargain by demanding that the relator "come[] forward with all the information he or she has in the first suit, rather than file piecemeal lawsuits."  *Smith*, 411 F. Supp. 2d at 75.  A relator who seeks a bounty in a second case based on information that he knew or could reasonably have known at the time of his initial complaint, yet failed to disclose, is not holding up his end of the deal.[6]

---

[6]     Shea claims (at 24) that applying the bar to suits brought by the same relator "creates a perverse incentive for a relator to file the broadest, speculative claims" in his or her first suit.  But as this Court explained in rejecting a similar argument in another context, this concern is unrealistic:  "the first plaintiff's complaint is still subject to the Rule 9(b) pleading requirements," and "if the first relator did not plead fraud with particularity, his complaint would be dismissed and he would lose his own shot at a monetary award."  *Batiste*, 659 F.3d at 1210-1211.

### C.    The Bar Applies Even Though *Verizon I* Is No Longer Pending

Shea also asserts (at 9-12) that even if the first-to-file bar applies, the district court should have dismissed this action without prejudice because *Verizon I* is no longer "pending" and thus—he claims—the first-to-file bar would not prevent him from re-filing the same claims in a new action.  He further argues (at 12-17) that the district court should not have dismissed this action at all because *Verizon I* was no longer pending when he filed the SAC.  Both arguments are meritless.

### 1.    The first-to-file bar continues to prohibit related suits even after the original action is no longer pending

The text, purpose, and legislative history of the first-to-file bar all make clear that the bar continues to preclude follow-on suits even after the original action is no longer pending.  The leading treatise on the FCA agrees.  *See* Boese, *Civil False Claims and Qui Tam Actions* §4.03[C][2][b] (4th ed. Supp. 2013).  And neither Shea nor the cases on which he relies provide any sound reason to hold that the first-to-file bar permits an indefinite number of related actions so long as they are filed seriatim.

Shea treats §3730(b)(5) as though it provided:  "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action *while the first action remains pending*."  But that is not what the statute says.  Instead, it provides:  "*When a person brings an action under this subsection*, no person other than the Government may intervene or bring a

- 33 -

related action based on the facts underlying the *pending action*."  In other words, the statute specifies the time when the bar commences—"[w]hen a person brings an action"—and provides that from that time forward, no person other than the Government may bring an action related to the one that is "pending" when the bar attaches.  The statute does not use the word "pending," as Shea suggests, to limit the period during which the bar applies.  Rather, the word "pending" serves to distinguish between the two actions referenced in the statute—the first-filed action (which, by definition, is "pending" "when" it is filed) and any subsequent action (which is not).  As another court has explained in rejecting Shea's reading, the word "pending" is "used as a short-hand for the first-filed action."  *United States ex rel. Powell v. American InterContinental Univ., Inc.*, 2012 WL 2885356, at *4 (N.D. Ga. July 12, 2012).

The role of the word "pending" is confirmed by its placement in the statute.  As this Court has recognized, the phrase "'based on the facts underlying the pending action' merely clarifies 'related action.'"  *Batiste*, 659 F.3d at 1208.  Shea's reading would clearly be incorrect if the statute simply provided:  "When a person brings an action under this subsection, no person other than the government may intervene or bring a related action."  And it is equally implausible to claim, as Shea must, that Congress imposed a significant limit on the bar—and drained it of much of its ability to prevent *qui tam* actions that the Government could pursue

- 34 -

itself—in a phrase that simply clarifies when an "action" is "related" to the first-filed action. "As the Supreme Court has repeatedly reminded us, Congress 'does not … hide elephants in mouseholes.'" *Miller v. Clinton*, 687 F.3d 1332, 1352 (D.C. Cir. 2012).

Had Congress actually intended to bar suits only while the first-filed action remained pending, it could easily have said so. In fact, it has done just that in other contexts. For example, 28 U.S.C. §1500 bars suits in the Court of Federal Claims only while the plaintiff "*has pending* in any other court any suit or process against the United States" based on the same claim. (Emphasis added.) Similarly, 42 U.S.C. §300aa-11(a)(5)(B) precludes a person from bringing a vaccine-related claim in the Court of Federal Claims if he or she "*has pending* a civil action for damages for a vaccine-related injury or death." (Emphasis added.) By ignoring Congress's choice to use different language in §3730(b)(5), it is Shea—and not the district court—who violates the principle that "'[s]tatutory construction must begin with the language employed by Congress,'" *NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013).

Nor can Shea's reading be reconciled with the legislative history of the first-to-file bar, which makes *no* mention of the significant limit on the bar's duration that Shea would read into a clarifying phrase. The House Report accompanying the False Claims Amendments Act of 1986 explained the first-to-file bar in

precisely the manner applied by the district court: "When an action is brought by a person, no person other than the Government may intervene or bring a related action." H.R. Rep. No. 99-660, at 30 (1986). The Report omits any reference to a requirement that the initial action remain pending or to a purported exception for cases filed after the initial suit is resolved—indeed, its discussion of §3730(b)(5) does not include the word "pending" at all. Neither does the Senate Report, which simply states that *qui tam* "enforcement … is not meant to produce … multiple separate suits based on identical facts and circumstances." S. Rep. No. 99-345, at 25 (1986). Had the word "pending" been meant as a substantive limit on the bar— rather than as a mere reference to the first-filed action—the House and Senate Reports surely would have mentioned it.

The bar's goal of "'rejecting suits which the government is capable of pursuing itself'" confirms this interpretation. *Batiste*, 659 F.3d at 1208. "Once the government is put on notice of its potential fraud claim"—which happens as soon as the first action is filed—then "the purpose behind allowing qui tam litigation is satisfied." *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004). And because the Government continues to be on notice even after the first-filed action is settled or adjudicated, the bar's primary purpose bears no connection to whether or when the first-filed action is resolved. As the Ninth Circuit explained, "[d]ismissed or not, [the first-filed] action

promptly alerted the Government to the essential facts of a fraudulent scheme—thereby fulfilling a goal behind the first-to-file rule." *Lujan*, 243 F.3d at 1188. Notably, the leading treatise on the FCA concludes that the bar should apply even after the original suit is no longer pending because its rationale "applies with equal force to earlier-filed cases that are already dismissed by the time a subsequent *qui tam* suit is filed." Boese, *Civil False Claims and Qui Tam Actions* §4.03[C][2][b].

Shea's view of the first-to-file bar would lead to haphazard and bizarre results. It would have the bar turn on the fortuity of when the first-filed case is resolved, but in this context it makes no sense to bar a suit one day and allow it to be filed the next. Shea's approach would permit relators to bring case after related case, collecting a new bounty with each imitative suit so long as they queued up to file their cases one after another. This would not only impose substantial burdens on defendants, but also hamper the Government's anti-fraud efforts by encouraging relators to disclose their information in piecemeal fashion rather than presenting everything at once, as required by the statute. *See* 31 U.S.C. §3730(b)(2).

Shea claims that his reading is supported by decisions of the Fourth, Seventh, and Tenth Circuits.[7] But the Fifth Circuit has assumed that an earlier-

---

[7]     As Shea recognizes (at 11), this Court has not spoken to the issue. Shea asserts that *Batiste* "suggested" that this Court would endorse his view, but he acknowledges that *Batiste* had no need to decide the issue because it had been waived. And in an earlier case, the Court suggested the opposite, stating in dicta that "§3730(b)(5) bars any action incorporating the same material elements of

filed action continues to bar related suits even after it is resolved.  *See Branch Consultants*, 560 F.3d at 379 (reserving the question whether the bar would still apply if the first-filed complaint were resolved through a dismissal under Rule 9(b) rather than on some other basis).[8]  Moreover, the cases on which Shea relies simply concluded without analysis that the first-to-file bar ceases to apply once the first-filed action is no longer pending.  None of them addressed the way the statute uses the word "pending" or considered a different reading.  Nor did they acknowledge the contrary legislative history or the ways in which their interpretation undermines the purpose of the first-to-file bar.  The earliest of the three cases, the Tenth Circuit's decision in *Natural Gas Royalties*, did not even present the question—instead, the court addressed the issue only in dicta, in the course of explaining its view of when two actions are "related."  *See* 566 F.3d at 964.  And in so doing, the court actually recognized that applying the bar only while the first-filed case

---

fraud as an action filed earlier," with no mention of any requirement that the first-filed action remain "pending."  *Hampton*, 318 F.3d at 217.

[8]     Many other cases have dismissed *qui tam* actions with prejudice under the first-to-file bar, something that would never be permitted under Shea's interpretation.  *See, e.g.*, *United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 20-21 (D.D.C. 2003); *United States ex rel. Pfeiffer v. Ela Med., Inc.*, 2010 WL 1380167, at *15 (D. Colo. Mar. 31, 2010); *United States ex rel. Becker v. Tools & Metals, Inc.*, 2009 WL 855651, at *14 (N.D. Tex. Mar. 31, 2009); *Her*, 2008 WL 5381321, at *3; *United States ex rel. Harris v. Alan Ritchey, Inc.*, 2006 WL 3761339, at *7 (W.D. Wash. Dec. 20, 2006); *United States ex rel. Friedman v. Eckerd Corp.*, 183 F. Supp. 2d 724, 725-726 (E.D. Pa. 2001); *United States ex rel. Wilson v. Emergency Med. Assocs. of Ill., Inc.*, 2000 WL 34026709, at *2-3 (N.D. Ill. Sept. 24, 2000).

remains pending is inconsistent with the notice-based interpretation this Court

adopted in *Batiste*:

> The fact that §3730(b)(5) applies only when another qui tam action is
> "pending" makes a notice-based standard even more dubious.… 
> While filing the complaint might put the government on notice, and
> while the government might remain on notice while the action is
> pending, the government does not cease to be on notice when a relator
> withdraws his claim or a court dismisses it.

*Id.* The Tenth Circuit's erroneous assumption about the bar's temporal limits thus

contributed to its mistaken conclusion that a "notice-based standard" should not

determine the bar's substantive scope.  This Court has already rejected the Tenth

Circuit's conclusion, holding that the bar applies where the earlier complaint

"suffices to put the U.S. government on notice" of the fraud alleged in the

subsequent action.  *Batiste*, 649 F.3d at 1209.  It should likewise reject the faulty

assumption on which that conclusion was based.

The other decisions on which Shea relies provide no more support for his

position.  In *Chovanec*, as in *Natural Gas Royalties*, the Seventh Circuit simply

stated without analysis that the first-to-file bar ceases to apply once the original

suit is resolved.  *See United States ex rel. Chovanec v. Apria Healthcare Group,

Inc.*, 606 F.3d 361, 365 (7th Cir. 2010).  And the Fourth Circuit's decision in

*Carter* merely cited *Natural Gas Royalties* and *Chovanec*.  *See* 710 F.3d at 183.[9]

---

[9]     The additional district court cases cited by Shea (at 11 n.22) simply followed
*Natural Gas Royalties*, *Chovanec*, and *Carter*.

- 39 -

This Court should decline Shea's invitation to follow the unconsidered and erroneous path taken in these cases.

> **2.     Jurisdiction under the first-to-file bar is determined when an action is brought**

Shea also claims (at 12-17) that the first-to-file bar no longer forecloses this action because *Verizon I* had been resolved by the time he amended his complaint. That argument fails for the reasons given above:  The first-to-file bar applies to all actions commenced after the first-filed action, whether or not that action remains pending.  It also fails for an additional reason.  As the district court explained, Shea's interpretation is foreclosed by the statutory text, which provides that "no person other than the Government may … *bring a related action*."  31 U.S.C. §3730(b)(5) (emphasis added).  One "bring[s] [an] action" by commencing a lawsuit with the filing of an initial complaint.  *See Black's Law Dictionary* 219 (9th ed. 2009) (defining "bring an action" as "[t]o sue" or "institute legal proceedings").  Accordingly, "the Court should look to the jurisdictional facts that existed at the time the action was filed, as opposed to facts that existed when the relator later filed an amended complaint."  *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 259 (E.D. La. 2011).  Here, there is no dispute that *Verizon I* was still pending when Shea brought this action.

This interpretation is confirmed by *Keene Corp. v. United States*, 508 U.S. 200 (1993). The statute at issue there, 28 U.S.C. §1500, provides that the Court of Federal Claims "shall not have jurisdiction" over a claim if the plaintiff "has pending in any other court any suit or process against the United States" based on the same claim. *Keene* invoked the "longstanding principle that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" 508 U.S. at 207. It thus held that jurisdiction under §1500 "turns on the facts upon filing," and that the subsequent dismissal of the related action could not retroactively confer jurisdiction that was lacking when the case was filed. *Id.* at 208-209. In so doing, the Court noted that this result was even more clearly compelled by the prior version of §1500, which provided—in terms paralleling §3730(b)(5)—that "'*[n]o person shall file* or prosecute … any claim for or in respect to which he … has pending in any other court any suit or process.'" 508 U.S. at 208 (emphasis added).

The presence of an amended complaint does not alter this result. To the contrary, the "amendment process cannot 'be used to create jurisdiction retroactively where it did not previously exist.'" *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011). If Shea's "complaint did not establish jurisdiction," therefore, "his amendments cannot save it." *Id.*; *accord, e.g.*, *Morongo Band of Mission Indians v. California St. Bd. of Equalization*, 858

- 41 -

F.2d 1376, 1380 (9th Cir. 1988).  As the Federal Circuit recently explained in a §1500 case, this result follows directly from the time-of-filing rule:  "It would defeat the purpose of the prohibition [in §1500] to permit a plaintiff to file his complaint during the prohibited period and then, after the prohibited period expired, rely on a supplemental complaint to cure the jurisdictional defect."  *Central Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012).

Shea acknowledges (at 14) the "general rule" that jurisdiction depends on the facts when the action was brought rather than when the complaint was amended, but he seeks an exception to that rule here for three reasons.  None is persuasive.

*First*, Shea contends (at 13-14) that this Court should follow *United States ex rel. Palmieri v. Alpharma, Inc.*, 2013 WL 821965, at *10 (D. Md. Mar. 5, 2013), which reasoned that "[i]t would elevate form over substance" to dismiss the action before it and require the relator to re-file a new suit once the related action was no longer pending.  But courts have no license to disregard jurisdictional limits they believe to be overly formalistic.  The Court of Claims followed that erroneous path in *Brown v. United States*, 358 F.2d 1002, 1005 (Ct. Cl. 1966), reinstating an action dismissed under §1500 on the ground that the earlier-filed suit was no longer pending.  Like *Palmieri* and Shea, *Brown* reasoned that "[t]he plaintiffs could undoubtedly file a new petition" and that "it does not seem fair or

make sense to insist that that must be done." *Id.* But in *Keene*, the Supreme Court specifically disapproved of this substance-over-form approach to jurisdictional limits, explaining that *Brown* had improperly "ignored the time-of-filing rule." 508 U.S. at 216-217 & n.12.

*Second*, Shea notes (at 14-15) that under 28 U.S.C. §1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." But Shea waived any argument based on §1653 by failing to raise it below. *See Trout v. Secretary of the Navy*, 540 F.3d 442, 448 (D.C. Cir. 2008). In any event, §1653 "speaks of amending '*allegations* of jurisdiction,'" which means that it "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989); *see* 3 *Moore's Federal Practice* §15.14[3] (3d ed. Supp. 2013). Accordingly, in the precedents of this Court on which Shea relies, the parties were allowed to invoke the "narrow parameters" of §1653 only where "an amendment merely correct[ed] a flawed statement of jurisdiction, not a flaw in the jurisdictional facts." *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 585-586 (D.C. Cir. 1993); *see also Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982) (allowing plaintiffs to waive claims over $10,000 to establish jurisdiction under the Tucker Act). Here, in contrast, Shea does not seek to correct a defective *allegation* about the jurisdictional facts that existed

when he brought this action; rather, he seeks to do precisely what the Supreme Court held §1653 does not allow—to correct "defects in the jurisdictional facts themselves" as they existed at the time of filing. *Newman-Green*, 490 U.S. at 831.[10]

*Third*, Shea is wrong to claim (at 16-17) that the district court's decision is inconsistent with *United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8 (D.D.C. 2003). In that case, the relator had filed suit in 1995 and then amended her complaint in 1997 to allege a kickback scheme entirely distinct from the misconduct initially alleged. *Id.* at 11. When the defendant moved to dismiss the newly added kickback claims under §3730(b)(5) based on a related suit filed after the 1995 complaint but before the 1997 amendment, the relator argued that the new claims should relate back to the filing of her original complaint. The court sensibly disagreed, recognizing that the relator's approach would "provide a back door" to avoid the first-to-file bar. *Id.* at 14. Instead, the Court held, ordinary principles of relation-back under Federal Rule of Civil Procedure 15 also apply to §3730(b)(5): A claim asserted in an amended complaint will relate back for first-

---

[10]    *Mathews v. Diaz*, 426 U.S. 67 (1976), is not to the contrary. *Diaz* cited §1653 in passing, but did not actually apply the statute, much less consider its textual limitation to curing "[d]efective *allegations* of jurisdiction." *See id.* at 75 n.9. Shea's reading of *Diaz* (at 15 n.28) is also foreclosed by the Supreme Court's more recent decision in *Newman-Green*, discussed above. *See* 490 U.S. at 830-832; *see also Central Pines*, 697 F.3d at 1366 (distinguishing *Diaz*).

to-file purposes if, and only if, it "'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'"  *Id.* at 14-15 (quoting Rule 15(c)(2)).  Because the relator's kickback claims did not satisfy this test, they "d[id] not relate back to the filing date of the original complaint."  *Id.* at 15.  Here, in contrast, Shea's amended complaints continue to assert the same basic claim presented in his original complaint.

Moreover, the contrary rule that Shea advocates would lead to bizarre results:  If, as Shea claims, jurisdiction were measured at the time of the filing of an amended complaint even if the complaint continued to assert the same claims, a relator would lose his or her priority under the first-to-file bar if someone else brought a related action after the filing of the original complaint but before the amendment.  That cannot be correct.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD AFFIRM THE DISMISSAL OF SHEA'S SUIT BASED ON THE FCA'S PUBLIC-DISCLOSURE BAR

Shea's claims are also foreclosed by the FCA's public-disclosure bar, which prevents a private relator from pursuing an action that is "based upon" allegations that were previously "publicly disclos[ed]" in specified sources unless the relator is the "original source" of the information.  31 U.S.C. §3730(e)(4)(A) (2009).[11]  This

---

[11]    Congress amended the public-disclosure bar in the Patient Protection and Affordable Care Act (PPACA), which was signed into law on March 23, 2010.  *See Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010).  This case is governed by the pre-

- 45 -

provision seeks to discourage "opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). Shea's claims are subject to the bar because, to the extent he has any information supporting his allegations of fraud, he found it on the Internet.

## A.    The Material Elements Of Shea's Allegations Were Publicly Disclosed

The public-disclosure bar applies "when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain." *Springfield*, 14 F.3d at 654. "[W]here all of the material elements of the fraudulent transaction are already in the public domain," a relator cannot pursue an FCA claim merely by "com[ing] forward with additional evidence." *Id.* at 655. Nor can a relator overcome the bar simply by using his "expertise" to piece together elements of a fraud that have been disclosed "in a form not accessible to most people." *Id.*

Shea alleges that Verizon billed taxes and surcharges to the Government in violation of its contracts. *See* JA59-61. This allegation comprises two material elements: (1) that twenty contracts between Verizon and various government

---

PPACA statute because the amendments do not apply retroactively to cases that were pending when PPACA was enacted. *See id.*; *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 n.1 (2011). In any event, as explained below, the outcome would be the same under either version of the bar.

entities allegedly disallowed certain surcharges, and (2) that Verizon allegedly

invoiced the Government for these surcharges.  As discussed in Part III, *infra*,

Shea's allegations as to both of these elements are wholly conclusory.  But to the

extent he has *any* information about the named contracts and the relevant invoices,

he got it from public sources on the Internet.[12]

*First*, Shea has not disputed that the limited information he has about the

contracts at issue is available on the Internet.  *See* Doc. 54 at 26-37.  Shea's

allegations about the contracts consist almost entirely of a list of the contract

names and numbers.  *See* JA59-61.  Shea admitted that he compiled his list from

public websites.  *See* JA81-83; JA114.[13]  And as for the three contracts for which

Shea sets forth any detail other than the contract name and number, that

information also can be found on the Internet—as he also admitted.[14]

---

[12]     Verizon demonstrated below that information available on the Internet falls
within the public-disclosure bar's prohibition on suits based on information
disclosed in the "news media," 31 U.S.C. §3730(e)(4)(A).  *See* Doc. 51-2 at 26
(citing cases).  Shea did not dispute this point below.  *See* Doc. 54 at 26-37.

[13]     *See, e.g.*, JA158-190 (online Verizon document identifying the contracts
named in SAC ¶28(a), 28(b), 28(c), 28(f), 28(h), 28(i), 28(j), 28(k), 28(l), and
28(m)); JA239 (Department of Defense website identifying the contract named in
¶28(e)); JA241 (website identifying the contract named in ¶28(g)); JA246 (online
Verizon document identifying the contract named in ¶28(d)).

[14]     JA104 ("I found this one, that contract number [for the FEMA contract
described in SAC ¶29], on a description kind of a—on Verizon's website"); JA106
("Q. Where did you get [the WITS 3 contract quoted in ¶30]?  A. Most likely
online."); JA108, 110, 112 (discussing the modifications to the Verizon Wireless
Federal Supply Schedule contract referenced in ¶¶32-40).

- 47 -

*Second*, Shea has not disputed that any relevant facts he knows about the particular surcharges that were actually billed were also gleaned from the Internet. *See* Doc. 54 at 26-37.  For many of the contracts at issue, Shea does not have any information about the surcharges imposed.  *See, e.g.*, JA85 ("Q. … How did Verizon bill on this contract?  A. Yeah, have—having not seen the billing for this contract, I don't know.").  For some contracts, Shea was able to find what he described as "mock-up invoicing," "training" invoices, or other billing-related documents, *see, e.g.*, JA88-89, but Shea does not dispute that he found all of these documents on the Internet, *see* JA88-92, 102-104.[15]

The only specific pieces of information Shea has identified as grounds for his current suit that he does not admit he found on the Internet are (1) an MCI document Shea says he received in 2004, *see* JA54, and (2) the contention that Verizon does not have a separate billing system for federal and commercial customers and that its "billing system do[es] not have the capability to turn off the surcharges that were generally charged to all customers," JA59.  To the extent this

---

[15]    In his deposition, Shea stated that he obtained a sample bill under the Verizon Wireless Federal Supply Schedule (SAC ¶28(d)) "from someone on the Judiciary Committee" in 2008 or 2009.  JA108.  But Shea conceded that the only surcharges shown on this bill—the Federal Universal Service Charge and Regulatory Charge—were the very ones that the contract modification language quoted in the SAC indicates were permitted to be charged under the contract through 2010.  JA108-110; *see* JA62-66 (quoting modifications).  Accordingly, this invoice is irrelevant to the public-disclosure analysis because it does not support the allegations in the SAC.

- 48 -

information is at all relevant, it is merely "additional evidence" in support of

Shea's claim and thus is insufficient to avoid the bar. *Springfield*, 14 F.3d at 655.

Shea admitted that the MCI document was specifically related to the FTS2001 and

FTS2001 Bridge Contracts, which were the subject of his first *qui tam* suit, but are

not at issue here. JA93-94, 97, 115 (referring to the MCI document as the

"CDRL"). He also admitted that Verizon has a variety of billing systems and that

he does not know whether his information about those systems applied to any

particular contract, let alone the contracts at issue here. *See* JA125-127, 129-130.

### B.    Shea Does Not Qualify As An Original Source

Because Shea's allegations are "based upon" publicly disclosed materials

found on the Internet, his lawsuit can proceed only if he is an "original source." 31

U.S.C. §3730(e)(4)(A) (2009). Shea, however, is not an "original source" of either

the contract information or the billing information that he found on the Internet

because he lacks "direct and independent knowledge." *Id.* §3730(e)(4)(B). "'Direct'

signifies 'marked by absence of an intervening agency,'" and "'[i]ndependent

knowledge' is knowledge that is not itself dependent on the public disclosure."

*Springfield*, 14 F.3d at 656. Knowledge derived from "Google," JA88, is neither.

Shea also would not be an "original source" even if PPACA's amended

definition of that term applied here. *See supra* n.11. After the PPACA

amendments, a person qualifies as an original source only if he has "voluntarily

- 49 -

disclosed to the Government" the relevant information "prior to a public disclosure" or if he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. §3730(e)(4)(B) (2013). Shea could not have disclosed the information that he has about the contracts or invoices to the Government "prior to" the "public disclosure" of that information on the Internet, because he admitted he found it on the Internet. Further, Shea offers no additional information that is "independent of and materially adds to the publicly disclosed allegations or transactions," *id.*, because—as discussed above—the only other information on which Shea bases his lawsuit is irrelevant or cumulative. Shea has never been an employee of Verizon or a consultant to a federal agency with respect to a Verizon contract, JA80-81, and he does not claim to have had direct access to Verizon's contracts or invoices.

In the district court, Shea's primary argument was that he qualifies as an original source because his background allowed him to understand the significance of obscure information he found on the Internet. *See* Doc. 54 at 34. But this Court has rejected precisely this argument, explaining that "[i]f a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997); *accord Springfield*, 14 F.3d at 655. In the court below, Shea

relied on *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039 (10th Cir. 2004),

but that case specifically noted that "[a] mere compilation of documents or reports

already in the public domain will not allow a relator to qualify as an original

source." *Id.* at 1045. Moreover, unlike Shea, the relators in *Kennard* relied on

"personal, private royalty records," not just public information. *Id.* at 1046; *see

also id.* ("Relators were not just assemblers of information."). Finally, even if

*Kennard* could be read to support Shea's position, such a reading would be

squarely in conflict with the law of this circuit.[16]

*       *       *

The public-disclosure bar thus provides an independently sufficient basis for

dismissing Shea's suit. Moreover, if this Court were to conclude that the first-to-

file bar precludes the present action but would not prevent Shea from re-filing the

same claims in a new suit, *see supra* Part I.C, the public-disclosure bar would

provide an alternative basis for affirming the district court's dismissal with

prejudice whether or not the public-disclosure bar precludes this action. If Shea

---

[16]    In the district court, Shea did not attempt to rely upon the 2004 MCI
document or his alleged knowledge of Verizon's billing systems to support his
claim of being an "original source." Shea admitted that he obtained this
information second- or third-hand, thus failing to satisfy the "direct" prong of the
original source inquiry. *See* JA93, 96 (MCI document was obtained "from a guy
that used to do some subcontracting work for me" who got it from an unnamed
Verizon employee); JA128-129 (information regarding billing systems came from
former Verizon employee interviewed by a private investigator).

were to re-file his claims in yet another suit, not only would the material elements of those claims have been disclosed on the Internet, but Shea's actual allegations of fraud would have been disclosed in this suit.  And because any future action would thus be even more plainly foreclosed by the public-disclosure bar, dismissal with prejudice is appropriate.  *Cf. Rollins v. Wackenhut Servs.*, 703 F.3d 122, 131 (D.C. Cir. 2012) (affirming dismissal with prejudice because any future suit would fail as a matter of law).

## III.   SHEA'S CLAIMS CANNOT SATISFY RULES 8(a) AND 9(b)

This action also cannot proceed because Shea cannot satisfy the basic pleading requirements of Rules 8(a) and 9(b).  This is not simply inartful pleading that might be cured in a new complaint.  To the contrary, Shea has conceded that he does not know the fundamental elements of his claims—what each contract says and what Verizon included in its invoices—and that he hopes to obtain this information in discovery.  But that stands Rule 9(b) on its head.  And it is particularly inappropriate in the context of the FCA, which is intended to reward those who *already have* inside information, not to create a mechanism for a private party to investigate whether a fraud may have occurred.

Rule 8(a) requires a plaintiff to allege sufficient facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

- 52 -

of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  FCA claims must also meet the more stringent requirements of Rule 9(b), which requires a complaint to "state with particularity the circumstances constituting fraud." *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-552 (D.C. Cir. 2002).  Under Rule 9(b), a complaint must "'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,'" and "identify individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

The SAC cannot satisfy the ordinary pleading requirements of Rule 8(a) , much less the heightened pleading requirements of Rule 9(b).  It simply lists twenty contracts and asserts "on information and belief" that Verizon improperly billed under those contracts.  JA59-61.  It does not offer any particularized allegations regarding the purportedly fraudulent charges Verizon submitted, such as what they were for, when they were made, by whom they were submitted, or what contract provision they purportedly violated.  Nor does the SAC allege facts indicating that Verizon acted with scienter.  *See, e.g.*, *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) (the FCA does not cover "'honest mistakes or incorrect claims submitted through mere negligence'").

- 53 -

At bottom, the SAC consists of nothing more than generalized speculation that Verizon may have billed *unspecified* non-allowed surcharges to the Government under *some* contracts over an *unspecified* period of time in an *unknown* amount.  As explained above (*see supra* pp.11-12), Shea has no actual knowledge of any fraud.  Indeed, in district court Shea conceded that he "cannot allege with certainty whether any particular contracts at issue permitted" the allegedly improper surcharges, Doc. 54 at 41, and that he "lacks access to [the] documents" showing "which surcharges [Verizon] charged the government under each of the contracts," *id.* at 42.

Shea's inability to plead the basic "who, what, when, where, and how" mandates dismissal.  Under the FCA and Rule 9(b), a relator is required to possess nonpublic information about a fraud on the Government *when he brings suit*—he cannot simply wait for discovery in the hope of finding information that might make out a claim.  *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 231 (1st Cir. 2004), *abrogated on other grounds by United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir.

2006); *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.,* 290 F.3d 1301, 1313-14 n.24 (11th Cir. 2002).[17]

Although in the ordinary course this Court might leave it to the district court to apply Rules 8(a) and 9(b) in the first instance, this is not an ordinary case. Here, Shea himself has effectively conceded that he *cannot* plead the required facts because he does not know what the contracts actually say nor what was included in the relevant bills. Instead, he hopes to learn this essential information in discovery. If permitted, that approach would transform the FCA from a statute that rewards genuine whistleblowers into one that permits opportunistic relators to use the courts to conduct burdensome private audits of government contracts. That is not what Congress intended, and it should not be allowed here. Rather than prolonging

---

[17]     Nor can Shea avoid Rule 9(b) by pleading "on information and belief" and asserting that "'the necessary information lies within defendants' control.'" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271,1279 n.3 (D.C. Cir. 1994). To the contrary, "standards for pleading on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *Id.* (brackets and internal quotation marks omitted); *cf. United States ex rel. Bender v. North Am. Telecomm.*, 499 F. App'x 44, 45 (D.C. Cir. 2013) (holding that a relator could not plead "on information and belief" because his complaint failed to "provide[] the factual basis for the charges"). Indeed, other courts of appeals have explained that it is particularly inappropriate to "further relax Rule 9(b) in the context of *qui tam* suits" because the FCA "grants a right of action to private citizens only if they have independently obtained knowledge of fraud." *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999), *abrogated on other grounds by United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009); *accord Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010); *Clausen*, 290 F.3d at 1314 n.25.

this litigation with a remand to reach this inevitable conclusion, this Court can and should simply affirm the dismissal of Shea's suit on this additional ground.

## CONCLUSION

The district court's judgment should be affirmed.


Respectfully submitted,


/s/ Randolph D. Moss
RANDOLPH D. MOSS
BRIAN M. BOYNTON
BRIAN H. FLETCHER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
randolph.moss@wilmerhale.com

August 12, 2013

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and D.C. Circuit Rule 32(a)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 13,772 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Randolph D. Moss
RANDOLPH D. MOSS

August 12, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Randolph D. Moss
RANDOLPH D. MOSS

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Page

31 U.S.C. §3730(b)(5)..................................................................A1

31 U.S.C. §3730(e)(4) (2009) ......................................................A2

31 U.S.C. §3730(e)(4) (2013) ......................................................A2

Federal Rule of Civil Procedure 8(a) .......................................A3

Federal Rule of Civil Procedure 9(b)........................................A3

**31 U.S.C. §3730(b)**

(b) Actions by private persons.—

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall—

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

A1

**31 U.S.C. §3730(e)(4) (2009)**

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

**31 U.S.C. §3730(e)(4) (2013)**

(4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

## Federal Rule of Civil Procedure 8(a)

(a) Claim for Relief.  A pleading that states a claim for relief must contain:

 (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

 (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

 (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

## Federal Rule of Civil Procedure 9(b)

(b) Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

A3