ORAL ARGUMENT HELD ON NOVEMBER 26, 2013

In The

# United States Court of Appeals

### For The District of Columbia Circuit

## UNITED STATES OF AMERICA,
## EX REL. STEPHEN M. SHEA,

*Plaintiff – Appellant*,

**v.**

## CELLCO PARTNERSHIP, doing business as Verizon Wireless; VERIZON BUSINESS NETWORK SERVICES, INC.; VERIZON FEDERAL INC.; MCI COMMUNICATIONS SERVICES, INC., doing business as Verizon Business Services,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————

## PETITION FOR REHEARING *EN BANC*

———————

**Christopher B. Mead**
**Mark London**
**Stuart A. Berman**
LONDON & MEAD
**1225 19th Street, NW, Suite 320**
**Washington, DC  20036**
**(202) 331-3334**

*Counsel for Appellant*

**THE LEX GROUP**DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

CONCISE STATEMENT OF THE ISSUE AND ITS IMPORTANCE ................... 1

STATEMENT OF FACTS ................................................................. 3

ARGUMENT ............................................................................. 5

    I.    THE MAJORITY'S HOLDING THAT A RELATOR'S
         PREVIOUS *QUI TAM* ACTION REQUIRES DISMISSAL
         WITH PREJUDICE OF A SUBSEQUENT ACTION
         INVOLVING DIFFERENT FALSE CLAIMS CONFLICTS
         WITH WELL-REASONED OPINIONS FROM THE
         FOURTH, SEVENTH AND TENTH CIRCUITS ............................. 5

    II.    THE MAJORITY ERRONEOUSLY INTERPRETS THE
         PHRASE "PENDING ACTION" IN 31 U.S.C. § 3730(b)(5)
         AS "SHORTHAND" FOR "FIRST-FILED ACTION" ...................... 8

    III.    THE MAJORITY'S OPINION CREATES CONFLICT
         BETWEEN THE FIRST-TO-FILE BAR AND THE PUBLIC
         DISCLOSURE BAR AND ITS ORIGINAL SOURCE
         EXCEPTION ........................................................... 13

CONCLUSION ........................................................................... 15

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004)........................................................................9

*Hibbs v. Winn*,
542 U.S. 88 (2004)........................................................................11

*In re Natural Gas Royalties Qui Tam Litig.*,
566 F.3d 956 (10th Cir. 2009) .........................................1, 5, 6, 7, 8

*Lawrence v. Florida*,
549 U.S. 327 (2007)........................................................................9

*Netcoalition & Secs. Indus. & Fin. Mkts. Ass'n v. SEC*,
715 F.3d 342 (D.C. Cir. 2013)........................................................9

*United States ex rel. Batiste v. SLM Corp.*,
659 F.3d 1204 (D.C. Cir. 2011)......................................................12

*United States ex rel. Carter v. Halliburton Co.*,
710 F.3d 171 (4th Cir.), *pet. for cert. filed*,
82 U.S.L.W. 3010-11 (U.S. June 24, 2013) ...................................1, 6, 7, 8

*United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*,
606 F.3d 361 (7th Cir. 2010) ........................................................1, 6, 7, 8

*United States ex rel. May v. Purdue Pharma L.P.*,
737 F.3d 908 (4th Cir. 2013) ........................................................8

*United States ex rel. Shea v. Verizon Bus. Network Servs. Inc.*,
904 F. Supp. 2d 28 (D.D.C. 2012)...................................................4

*Chief Authorities are Designated by an Asterisk.*

## STATUTES

11 U.S.C. § 143 ...................................................................................11

25 U.S.C. § 1300d-27(b)(2) ...............................................................12

28 U.S.C. § 143 ...................................................................................11

28 U.S.C. § 636 ...................................................................................11

28 U.S.C. § 1500 .................................................................................11

28 U.S.C. § 1964 .................................................................................11

28 U.S.C. § 2041 .................................................................................11

28 U.S.C. § 2244(d)(2)..........................................................................9

31 U.S.C. § 3730(b)(5)..........................................................1, 5, 6, 8, 9, 12

31 U.S.C. § 3730(e)(4)(A) ...............................................................2, 13

31 U.S.C. § 3730(e)(4)(B) ...............................................................2, 13

42 U.S.C. § 300aa-11(a)(5)(B) ..........................................................11

45 U.S.C. § 915 ...................................................................................11

49 U.S.C. § 30121(d) ..........................................................................12

False Claims Amendments Act of 1986,
Pub. L. 99-562, 100 Stat. 3153 (1986)..............................................5, 13

## RULE

Fed. R. App. P. 35 .................................................................................1

## <u>OTHER AUTHORITIES</u>

Black's Law Dictionary (5th ed. 1979)........................................................9

Black's Law Dictionary (9th ed. 2009)......................................................9

S. Rep. No. 99-345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 .........................5

## CONCISE STATEMENT OF THE ISSUE AND ITS IMPORTANCE

In its April 11, 2014 Opinion, a divided panel of this Court held that the first-to-file bar provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(5), requires dismissal of a related case with prejudice even when the first-filed action is no longer pending.  Under Rule 35 of the Federal Rules of Appellate Procedure, *en banc* review is necessary because the proceeding presents a question of exceptional importance, in that the panel majority's decision conflicts with authoritative decisions of every other United States Court of Appeals that has addressed this issue.  As Judge Srinivasan stated in dissenting from the affirmance of the dismissal with prejudice:  "Until now, the courts of appeals to address the question have uniformly concluded that the first-to-file bar applies only while the first-file action remains pending."  Opinion of Srinivasan, J., concurring in part and dissenting in part ("Srinivasan Op.") at 3 (citing *United States ex rel. Carter v. Halliburton Co.*, 10 F.3d 171, 183 (4th Cir.), *pet. for cert. filed*, 82 U.S.L.W. 3010-11 (U.S. June 24, 2013); *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361, 365 (7th Cir. 2010)).  "[T]he majority's reading of the first-to-file bar creates a circuit conflict, and it also diverges from the carefully considered dictum of another circuit."  *Id*. (citing *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 964 (10th Cir. 2009)).  The majority concedes that its

opinion creates a circuit split. Slip op. at 11 ("we will respectfully disagree with the other circuits.").

Moreover, the majority opinion raises questions of exceptional importance with respect to the FCA, a critical tool for combating fraud against the federal government. The majority holds that a relator who discovered fraud involving two telecommunications contracts with one federal government agency that helped the government recover $93.5 million in illegal overcharges, and who then discovered additional fraud by the same corporate family involving 20 other contracts and six additional agencies, was barred from pursuing a second FCA action because the first case remained "pending" in perpetuity.  This reading of "pending" cannot be squared with dictionary definitions, hornbook principles of statutory construction, and the use of "pending" throughout the United States Code. The majority's interpretation of the first-to-file bar is also incompatible with the FCA's public-disclosure bar, which prohibits a relator from suing if "substantially the same allegations or transactions" have been "publicly disclosed," 31 U.S.C. § 3730(e)(4)(A), but exempts an "original source" who possesses independent knowledge of the subject matter. 31 U.S.C. § 3730(e)(4)(B).  "The majority's expansive interpretation of the first-to-file bar in fact would tend to *undermine* Congress's careful calibration of the public-disclosure bar" in that "an action that Congress specifically sought to allow under the original-source exception would

nonetheless be disallowed under the first-to-file bar."  Srinivasan Op. at 10 (emphasis in original).

## STATEMENT OF FACTS

Relator Stephen M. Shea, a consultant for large commercial customers who recovered over $50 million in overcharges from telecommunications carriers, filed a *qui tam* complaint under the False Claims Act in January 2007 against telecommunications entities collectively referred to as Verizon ("*Verizon I*"). The complaint alleged that Verizon overcharged the United States Government in connection with two contracts – the FTS2001 Contract and the FTS2001 Bridge Contract – to provide telecommunications services to the General Services Administration ("GSA").  *Verizon I* did not allege corporate-wide fraud on every federal telecommunications contract and, while it alleged overcharges relating to many federal surcharges, state taxes, and fees, it specifically *excluded* certain items as acceptable line item charges under the GSA contracts.  JA 54, 138-57.

While *Verizon I* was pending, Shea gathered information that Verizon was committing fraud on 20 other federal telecommunications contracts. Some of these contracts were with GSA, but many others were with six agencies not involved in *Verizon I*: the United States Postal Service; the Departments of Defense, Justice, and the Navy; the Federal Emergency Management Agency, and the Federal Aviation Administration.  Rather than delay *Verizon I*, Shea included these 20

additional contracts in a second *qui tam* action against Verizon entities that was filed on June 5, 2009 ("*Verizon II*").  *Verizon II* also alleged improper billing of the Federal Universal Service Charge, a surcharge not at issue in *Verizon I*.  JA 12-31.

Verizon paid the United States $93.5 million to settle *Verizon I*, which was dismissed with prejudice on February 28, 2011.  JA 306.  Verizon did not admit liability and the *Verizon I* Settlement Agreement released Verizon only from conduct relating to the FTS2001 and FTS2001 Bridge Contracts.  JA 260-61.  On November 30, 2011, the United States informed the district court that it was "not intervening at this time" in *Verizon II*.  JA 34-35.  On September 12, 2012, Shea filed a Second Amended Complaint ("SAC").  JA 52-71.

Verizon moved to dismiss the SAC for lack of subject matter jurisdiction.  On November 15, 2012, the district court held that under the first-to-file bar, the *Verizon I* lawsuit relating to two GSA contracts required dismissal with prejudice of Shea's complaint in *Verizon II* relating to 20 other contracts and a different surcharge.  *United States ex rel. Shea v. Verizon Bus. Network Servs. Inc.*, 904 F. Supp. 2d 28 (D.D.C. 2012).

This appeal followed.  The two-member panel majority affirmed dismissal of the SAC with prejudice.  The partial dissent urged dismissal without prejudice, because once *Verizon I* was no longer pending, "the first-to-file bar should pose no continuing obstacle to the filing of a subsequent action."  Srinivasan Op. at 1.

# ARGUMENT

I.   **THE MAJORITY'S HOLDING THAT A RELATOR'S PREVIOUS *QUI TAM* ACTION REQUIRES DISMISSAL WITH PREJUDICE OF A SUBSEQUENT ACTION INVOLVING DIFFERENT FALSE CLAIMS CONFLICTS WITH WELL-REASONED OPINIONS FROM THE FOURTH, SEVENTH AND TENTH CIRCUITS.**

The FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." *Verizon I* ceased to be "pending" when it was dismissed on February 28, 2011. The SAC in *Verizon II* was filed more than 18 months later. Every other court of appeal to consider the issue has held that the first-to-file bar operates only while the first action remains "pending;" the majority opinion creates a circuit split. Slip op. at 11 ("we will respectfully disagree with the other circuits.").

The well-reasoned prior rulings from other courts of appeals correctly interpreted the first-to-file bar in harmony with the entire FCA and Congressional intent to expand civil fraud enforcement through landmark 1986 FCA amendments.[1] Focusing on the FCA's text and structure, the Tenth Circuit analyzed differences between the FCA's first-to-file and public-disclosure bars. The Tenth Circuit concluded that "§ 3730(b)(5) applies only when another *qui tam*

---

[1]     False Claims Amendments Act of 1986, Pub. L. 99-562, 100 Stat. 3153 (1986); *see* S. Rep. No. 99-345, at 2 (1986) (purpose of the amendments is to encourage private individuals with knowledge of fraudulent claims presented to the government to come forward).

action is 'pending'" and that "if that prior claim is no longer pending, the first-to-file bar no longer applies." *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 964 (10th Cir. 2009).

The Seventh Circuit agreed. In *United States ex rel. Chovanec v. Apria Healthcare Grp.*, *Inc.*, 606 F.3d 361 (7th Cir. 2010), the relator filed an action in Illinois involving alleged fraudulent billing of Medicare and Medicaid programs for unnecessary medical devices and services. Two earlier FCA actions against the same defendant, *Costa* and *Wickern*, were pending in California and Kansas. The district court dismissed the complaint with prejudice because it was "related" to those suits. Four days later, the other two cases were settled, but the district court declined to reconsider its dismissal with prejudice.

The court of appeals, through Judge Easterbrook, reversed:

> … § 3730(b)(5) applies only while the initial complaint is "pending." *Costa* and *Wickern* are no longer pending (and weren't pending when the district court denied Chovanec's motion for reconsideration), so she is entitled to file a new *qui tam* complaint – entitled, that is, as far as § 3730(b)(5) goes….

> Because *Costa* and *Wickern* were not pending when the district court made its final decision – and because Chovanec may be able to frame a new complaint that would survive a motion to dismiss – the current proceeding should have been dismissed without prejudice….

606 F.3d at 365 (citation omitted).

The Fourth Circuit adopted the same interpretation of § 3730(b)(5) last year. *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171 (4th Cir.), *pet. for*

- 6 -

*cert. filed*, 82 U.S.L.W. 3010-11 (U.S. June 24, 2013). Carter's action was

originally filed in 2006 in California and was transferred in 2008 to the Eastern

District of Virginia, where it was amended, dismissed without prejudice, and then

re-filed in June 2011. Two allegedly related actions were filed in 2007 in

Maryland and Texas, but were dismissed in October 2011 and March 2012,

respectively. The Virginia court dismissed Carter's complaint with prejudice in

November 2011, in part because the Maryland case was related and pending when

Carter's 2011 action was filed.

The Fourth Circuit reversed the dismissal with prejudice. Relying on

*Chovanec* and *In re Natural Gas Royalties*, the court concluded:

> We agree that once a case is no longer pending the first-to-file bar
> does not stop a relator from filing a related case. In this case, both of
> the original actions have been dismissed. Because of this, the
> first-to-file bar does not preclude Carter from filing an action. The
> first-to-file bar allows a plaintiff to bring a claim later; this is precisely
> what a dismissal without prejudice allows a plaintiff to do as well.
> Therefore, Carter's only impediment at the moment is the district
> court's dismissal with prejudice. And, as we have already concluded
> the district court erred in dismissing Carter's complaint with
> prejudice.

710 F.3d at 183.

In the present case, the majority offered a contrary analysis of the FCA in

which "the first-to-file bar applies even if the initial action is no longer pending,

because we read the term 'pending' in the statutory phrase 'pending action' to

distinguish the earlier-file action from the later-filed action." Slip op. at 9. The

majority concluded that the "plain text" of § 3730(b)(5) supports a "referential" reading of "pending;" asserted that Congress failed to "express[] its intent to make the first-to-file bar temporal, as it has in other contexts;" and invoked "policy considerations" that supposedly weigh against permitting related *qui tam* actions where the government allegedly knows about the fraud. *Id.* at 9-10. The majority rejected *Chovanec* on the grounds that "[t]he references to the necessity of pendency are more dicta than holding." *Id.* at 11. It disagreed with *In re Natural Gas Royalties* because the Tenth Circuit's analysis "is pure dicta and is unaccompanied by any reasoning as to the construction of the term 'pending.'" *Id.* The majority similarly dismissed *Carter* and a subsequent Fourth Circuit case, *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013), on the grounds that *Carter* relied on *Natural Gas Royalties* and failed to properly analyze the meaning of "pending." *Id.*

Accordingly, the majority opinion diverged from the holdings of the Fourth and Seventh Circuits, and the detailed dicta of the Tenth Circuit. This circuit split on a matter of exceptional importance warrants *en banc* review.

## II.  THE MAJORITY ERRONEOUSLY INTERPRETS THE PHRASE "PENDING ACTION" IN 31 U.S.C. § 3730(b)(5) AS "SHORTHAND" FOR "FIRST-FILED ACTION."

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses

the legislative purpose." *Netcoalition & Secs. Indus. & Fin. Mkts. Ass'n v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004)).  The first-to-file bar prohibits any person other than the Government from bringing "a related action based on the facts underlying the pending action."  The majority's interpretation of § 3730(b)(5) violated this principle by opting "to read 'pending action' in the statute as shorthand for 'first-filed action.'"  Slip op. at 8. When the first-to-file bar was enacted, Black's Law Dictionary defined "pending" to mean:

> Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus an action or suit is "pending" from its inception until the rendition of final judgment.

Black's Law Dictionary 1021 (5th ed. 1979). The current edition defines "pending" in part as: "Remaining undecided; awaiting decision <a pending case>."  Black's Law Dictionary (9th ed. 2009). As the dissent points out, applying this definition means that "[o]nce the initial action is no longer 'pending,' the [first-to-file] provision poses no bar to 'bring[ing] a related action.'"  Srinivasan Op. at 4.

The flaws with the majority's definition of "pending" do not end there. Every civil case is eventually resolved through a final judgment, is sent to the district court's archives, and is no longer "pending" before the court.  *Cf. Lawrence v. Florida*, 549 U.S. 327, 334 (2007) (under 28 U.S.C. § 2244(d)(2), "[w]hen the state courts have issued a final judgment on a state application, it is no longer

pending….").  FCA cases are no exception. If the judgment in *Verizon I* is final – as

Verizon would surely claim if the United States or Shea tried to reopen the

case – the case cannot be "pending" as Congress and judges routinely use that term.

Moreover, the majority's interpretation of the FCA actually renders the

word "pending" superfluous in the statute. As Judge Srinivasan points out:

> … The majority reasons that the words "pending action" serve as
> "shorthand for 'first-filed action,'" and that the "simplest reading of
> 'pending' is the referential one; it serves to identify which action bars
> the other." *Ante*, at 8-10.  But there is no great mystery about "which
> action bars the other."  The phrase "no person … may … bring a
> related action" already makes clear that the first-filed action bars the
> subsequent, "related action," not the other way around.  What is
> unclear is the duration of that bar.  The word "pending" answers that
> question: the bar operates while the first-filed action remains
> "pending."  It does not operate thereafter.
>
> Because the statute, without the word "pending," already makes
> plain "which action bars the other," *ante*, at 10, the word "pending"
> does little work under the majority's interpretation.  *See TRW Inc. v.
> Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of
> statutory construction that …, if it can be prevented, no … word shall
> be superfluous, void, or insignificant." (internal quotation marks
> omitted)).  It therefore is of little help to the majority to reconceive of
> the statute as if it contained the words "thence forth." *Ante*, at 9-10.
> Congress did not include those words; but even if it had, the word
> "pending" would still be superfluous.  Indeed, not only does
> "pending" perform no function under the majority's interpretation, but
> *removing* "pending" would make the majority's interpretation *more* –
> not less – acceptable.  The provision would then say:  "When a person
> brings an action under this subsection, no person … may … bring a
> related action based on the facts underlying the [] action."  That
> language speaks more in the nature of a permanent bar than does the
> enacted text.

- 10 -

*Srinivasan* Op. at 4-5. *See also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("The rule against superfluities complements the principle that courts are to interpret the words of a statute in context.").

Had Congress truly intended to make "pending" a shorthand reference to an earlier-filed suit, there were many better choices available: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying that [prior, prior-filed, earlier, earlier-filed, previous, previously-filed, first, first-filed, preceding] action." For this reason, the majority erred when it concluded that if Congress had intended to make the first-to-file bar temporal, it would have used "has pending" rather than "pending." Slip op. at 10 (citing 28 U.S.C. § 1500 and 42 U.S.C. § 300aa-11(a)(5)(B)). In fact, Congress frequently has used "pending" alone, not "has pending," to refer to current, active cases,[2] and it has specifically distinguished between "pending" and "adjudicated" cases. *See* 28 U.S.C. § 2041 (requiring prompt deposit of "[a]ll moneys paid into any court of the United States, or received by the officers thereof, in any case *pending or adjudicated* in such

---

[2]     *See* 28 U.S.C. § 636 (magistrate judges may hear matters "concerning release or detention of persons pending trial" and certain "pretrial matter[s] pending before the court"); 28 U.S.C. § 143 (governing "all pending process, pleadings and proceedings" in event of judicial vacancy); 28 U.S.C. § 1964 (relating to real property actions "pending in" state and federal courts); 11 U.S.C. § 143 (governing trustee vacancy in "any pending action or proceeding"); 45 U.S.C. § 915 (authorizing court orders "in any case pending under" specified bankruptcy provision).

court….") (emphasis added).  If Congress wanted to permanently bar all FCA complaints filed after the first action, it knew how to use exactly those words. Srinivasan Op. at 6 (citing 25 U.S.C. § 1300d-27(b)(2) ("After the filing of a first action…, all other actions … shall be consolidated with that *first action*.")); *see also* 49 U.S.C. § 30121(d) (cases "shall be consolidated … under an order of the court in which the *first action* was brought.") (emphasis added).[3]

Finally, the majority asserted that its reading of "pending" in § 3730(b)(5) "better suits the policy considerations undergirding the statute" because other courts' reading of the first-to-file provision "would allow related *qui tam* suits indefinitely – no matter to what extent the government could have already pursued those claims based on earlier actions."  Slip op. at 10. In fact, the majority opened the door to a far worse policy problem:  narrowly-crafted, perhaps even collusive,

---

[3]     The majority also distinguished this Court's opinion in *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204 (D.C. Cir. 2011), which stated that "[t]he statutory text imposes a bar on complaints related to earlier-filed, 'pending' actions. The command is simple: as long as a first-filed complaint *remains pending*, no related complaint may be filed." *Id.* at 1210 (emphasis added). Appellant agrees that this language is dicta, *see* slip op. at 9, but at the same time the majority's "shorthand" reading of "pending action" transforms the "simple command" in *Batiste* into a reading irrelevant to *Batiste's* holding: "as long as the first-filed complaint remains first-filed."  The holding in *Batiste* cannot be squared with a rule that a first-filed but dismissed FCA action remains pending in perpetuity. If that were the case, *Batiste* would have held that "once first-filed case is filed, no related complaint may be filed" and it would not have addressed whether relator Batiste waived his right to seek leave to amend his complaint, *id.* at 1211, because if "pending" means "first-filed" then amending the complaint would have been futile.

first-filed cases whose unintentional or intentional effect would be to foreclose

FCA actions that might help the government recover damages for massive frauds.

Such a result would fly in the face of the goals of the 1986 FCA amendments.

## III. THE MAJORITY'S OPINION CREATES CONFLICT BETWEEN THE FIRST-TO-FILE BAR AND THE PUBLIC DISCLOSURE BAR AND ITS ORIGINAL SOURCE EXCEPTION.

The public-disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4)(A), prohibits

any *qui tam* action based upon information that has been disclosed to the public

through criminal, civil, or administrative hearings in which the government is a

party, government hearings, audits, reports, or investigations, or the news media.

An original source of the information is exempt from the bar under

§ 3730(e)(4)(B). As Judge Srinivasan demonstrates, the majority's interpretation of

the first-to-file bar "cannot be squared with the intended operation of the False

Claim Act's public-disclosure bar."  Srinivasan Op. at 7.

The first-to-file bar exists to protect a relator who wins the "race to the

courthouse," but once the initial claim is no longer pending, any subsequently-filed

action "could not affect – or, more to the point, diminish – [the initial relator's]

recovery."  *Id*. at 8. "Copycat actions" can be addressed by claim preclusion and

the public-disclosure bar. *Id*. at 8-9. "There is thus no need to give the first-to-file

bar an unduly broad reading to fend off 'duplicative suits [that] contribute nothing

to the government's knowledge of fraud.' [Slip op.] at 10. The public-disclosure

bar exists to do exactly that."  Srinivasan Op. at 9.

Indeed, the majority opinion effectively eviscerates the original-source

exception, and ignores the reality that the federal government may be on notice of

a fraud but lack the resources or evidence to pursue the claim. As Judge Srinivasan

states, the costs to the government could be substantial:

> Under the majority's interpretation of the first-to-file bar,
> however, an action that Congress specifically sought to allow under
> the original-source exception would nonetheless be disallowed under
> the first-to-file bar. Suppose, for example, that an action filed by
> Relator A alerts the government to an actual and important instance of
> fraud but is dismissed for reasons having nothing to do with the
> merits; and suppose, further, that the government elects not to
> intervene due to lack of resources.  The original source exception
> would permit a related action by Relator B, an original source with
> independent information about the fraud, notwithstanding the
> public-disclosure bar. But the majority nevertheless would read the
> first-to-file bar to prohibit Relator B's action in perpetuity.  There is
> no reason to think that Congress carefully and specifically opened the
> door to Relator B's action via the original-source exception, only to
> slam the door shut via the first-to-file bar.  By contrast, if the
> first-to-file bar is understood to apply only while the initial action is
> "pending," Relator B could thereafter bring an original-source action,
> as Congress presumably intended she be free to do.

*Id.* at 10-11.  This Court should correct a result so contrary to the text and purpose

of the FCA.

## **CONCLUSION**

Appellant respectfully requests that the Court grant rehearing *en banc*.

Respectfully submitted,

/s/ Christopher B. Mead
Christopher B. Mead
Mark London
Stuart A. Berman
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036
Tel.: (202) 331-3334
cmead@londonandmead.com

*Attorneys for Appellant*

Dated:  May 9, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 9th day of May, 2014, I caused this Petition for

Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

    Randolph D. Moss
    Brian M. Boynton
    Seth P. Waxman
    Wilmer Cutler Pickering Hale and Dorr LLP
    1875 Pennsylvania Avenue, NW
    Washington, DC  20006
    (202) 663-6000

    *Counsel for Appellee*

I further certify that on this 9th day of May, 2014, I caused the required

copies of the Petition for Rehearing *En Banc* to be hand filed with the Clerk of the

Court.

               /s/ Christopher B. Mead
               *Counsel for Appellant*

# **ADDENDUM**

## **TABLE OF CONTENTS**

**Page**

Opinion of
The United States Court of Appeals for
The District of Columbia
        filed April 11, 2014.................................................................................Add. 1

Certificate as to Parties, Rulings and Related Cases ......................................Add. 25

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 26, 2013       Decided April 11, 2014

No. 12-7133

UNITED STATES OF AMERICA, EX REL. STEPHEN M. SHEA,
APPELLANT

v.

CELLCO PARTNERSHIP, DOING BUSINESS AS VERIZON
WIRELESS, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01050)

———

*Christopher Mead* argued the cause for appellant. With him
on the briefs was *Mark London*.

*Seth P. Waxman* argued the cause for appellees. On the
brief were *Randolph D. Moss* and *Brian M. Boynton*.

*John P. Elwood*, *Eric A. White*, *Rachel L. Brand*, and *Steven
P. Lehotsky* were on the brief for *amicus curiae* The Chamber of
Commerce of the United States of America in support of
appellees.

Before: SRINIVASAN, *Circuit Judge*, and EDWARDS and
SENTELLE, *Senior Circuit Judges*.

2

Opinion for the Court filed by *Senior Circuit Judge*
SENTELLE.

Opinion concurring in part and dissenting in part filed by
*Circuit Judge* SRINIVASAN.

SENTELLE, *Senior Circuit Judge*:  Relator Stephen M. Shea,
on behalf of the United States, appeals the district court's
dismissal of his *qui tam* complaint for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The
district court held that a complaint Shea had earlier filed barred
its consideration of this complaint under the first-to-file rule of
the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(5).
We affirm the district court.  We hold that this complaint is
sufficiently related to Shea's earlier action, that the first-to-file
bar applies to Shea even though he brought the first action, and
that the bar remains in effect even after the first action is no
longer pending.

## I. BACKGROUND

### A. *Verizon I*

On January 16, 2007, Stephen M. Shea filed a complaint on
behalf of the United States government against Verizon (*Verizon
I*) under the *qui tam* provisions of the FCA, 31 U.S.C.
§§ 3729–3732.  The FCA authorizes private parties ("relators")
to bring false claims actions in the name of the United States,
and to recover a portion of the proceeds of the action if
successful.  *See id.* § 3730(b), (d).

Shea's 2007 complaint alleged the submission of false
claims by Verizon.  More specifically, the complaint contained
the following allegations:  (1) that Verizon made "knowing
submission to the United States of certain prohibited surcharges

3

under contracts to provide telecommunications services" to the General Services Administration ("GSA"); (2) that Shea is a telecommunications consultant; (3) that Shea based his allegations on experience with Verizon's alleged practice of "billing corporate clients not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes) that were added to bills . . . to inflate . . . revenue," 2007 Complaint ¶¶ 2, 12; (4) that Verizon used "the same billing platform" for both business customers and the United States, 2007 Complaint ¶¶ 6, 81; (5) that through this practice, Verizon charged the government "Federal, State, and local taxes and duties" contrary to Federal Acquisition Regulations ("FAR"), FAR 52.229-4(b), 48 C.F.R. 52.229–4(b), 2007 Complaint ¶ 20; and (6) that Shea became aware of the alleged conduct through an internal document he received in 2004 which listed "the taxes and surcharges that the Federal Government is responsible for." 2007 Complaint ¶ 70. The United States intervened in *Verizon I*, and in February 2011, the parties settled the case without admission of liability. Shea received nearly $20 million for his role in the litigation.

## B. *Verizon II*

Shea filed the present second *qui tam* action against Verizon (*Verizon II*) on June 5, 2009, and on September 12, 2012 filed a Second Amended Complaint ("SAC"). The SAC closely mirrors Shea's complaint in *Verizon I*: (1) it too alleges a scheme by Verizon "to defraud the United States by knowingly billing the government for non-allowable surcharges," SAC ¶ 1; (2) it traces Shea's knowledge to "his experience consulting with large commercial telecommunications customers" through which he "learned that most telecommunication carriers, including . . . Verizon . . . had a custom and practice of charging [Non-Allowable Charges]," SAC ¶ 3; (3) it identifies the same 2004 document as the source of his information, SAC ¶ 4; and

4

(4) it alleges that Verizon "overcharged the United States, just like its commercial customers" by billing non-allowable charges on several government contracts. SAC ¶¶ 4, 28. The only difference between the 2007 Complaint and the SAC is that the SAC expands Shea's allegations to more contracts, more charges, and more governmental agencies.

## C. Procedural History

On November 15, 2012, the district court dismissed Shea's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *U.S. ex rel. Shea v. Verizon Bus. Network Servs. Inc.*, 904 F. Supp. 2d 28, 37 (D.D.C. 2012). The court held that under the FCA's first-to-file bar, Shea's complaint in *Verizon I* barred the court's consideration of his complaint in *Verizon II*. The first-to-file bar provides that "[w]hen a person brings an action under [The FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

The district court concluded that *Verizon II* was barred because it alleged "a fraudulent scheme the government already would be equipped to investigate" based on the complaint in *Verizon I. Shea*, 904 F. Supp. 2d 28 at 36 (quoting *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011)). Shea argued that dismissal under the first-to-file bar should be without prejudice, because *Verizon I* was no longer pending when the court disposed of *Verizon II*; thus, Shea urged, he should be able to re-file his action. The district court disagreed. This appeal followed.

5

## II. ANALYSIS

Shea raises three arguments on appeal: (A) the district court erred in finding *Verizon I* and *Verizon II* related because they involve different contracts and different agencies; (B) the district court improperly held that the first-to-file bar applies to Shea even though he was the relator in both actions; and (C) the district court erred in dismissing *Verizon II* with prejudice because *Verizon I* was no longer pending when Shea filed his second amended complaint in *Verizon II*.

Reviewing the dismissal for lack of jurisdiction *de novo*, *see Batiste*, 659 F.3d at 1208, we agree with the district court that this complaint is "related"—within the meaning of the FCA—to Shea's earlier action, that the first-to-file bar applies to Shea even though he brought the first action, and that the bar remains effective even after the first action is no longer pending.

### A. Same Material Elements of Fraud

Under the first-to-file bar, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). A second action is "related" if it incorporates "the same material elements of fraud" as the earlier-filed action. *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003). "[T]wo complaints need not allege identical facts for the first-filed complaint to bar the later-filed complaint." *Batiste*, 659 F.3d at 1208. Instead, later actions are barred where the first would have "suffice[d] to equip the government to investigate" the fraud alleged in the later action. *Id.* at 1209.

6

Shea argues that *Verizon I* and *Verizon II* are unrelated. He seizes on language in *Batiste*, where we noted that one aspect of the relatedness inquiry goes to whether the second complaint would "give rise to a different investigation or recovery" than the first. *Batiste*, 659 F.3d at 1210. As Shea notes, *Verizon II* includes agencies, contracts, and charges not included in *Verizon I*. These differences would necessitate further investigation, and—were Shea successful—result in additional recovery. Because *Verizon II* would give rise to a different investigation and further recoveries, he contends, the actions are not related. We are unconvinced.

On Shea's reasoning, two complaints would have to be identical in order to be "related." After all, *any* difference in any aspect of a later complaint could result in some "different investigation or recovery." *Cf. Batiste*, 659 F.3d at 1210. Relatedness is broader than identity. As we noted in *Batiste*, the first-to-file rule serves two purposes: "rejecting suits which the government is capable of pursuing itself," and "promoting those which the government is not equipped to bring on its own." *Id.* at 1208 (quoting *Hampton*, 318 F.3d at 217). A side-by-side comparison shows that *Verizon II* is precisely the kind of action barred under this standard.

Both complaints claim that Shea discovered the alleged scheme based on his experience as a telecommunications consultant. *See* 2007 Complaint ¶ 12; SAC ¶ 3. Both complaints trace Shea's knowledge to the same billing document he received in 2004. 2007 Complaint ¶ 70; SAC ¶ 4. Both complaints allege that Verizon billed the U.S. government with the same system it used for commercial customers. 2007 Complaint ¶ 81; SAC ¶ 27. And both allege that through this system Verizon billed the U.S. government prohibited surcharges. 2007 Complaint ¶ 20; SAC ¶ 4. In point of fact, *Verizon II* is indistinguishable from *Verizon I* except as to its

7

scope. Yet the allegations and legal theory of *Verizon I* would alert the government to the possibility of a fraudulent scheme that went beyond the specifics of *Verizon I*. Shea's allegations centered on Verizon's "uniform billing practices," through which it overcharged the government and corporate clients alike. 2007 Complaint ¶¶ 6, 81. Presumably, if Verizon's billing practice was truly uniform, it was so as to all government contracts, not just the GSA.

Under *Batiste,* these complaints allege the same fraudulent scheme. *See Batiste*, 659 F.3d at 1209. *Verizon I* would suffice to equip the government to investigate Shea's expanded allegations in *Verizon II*. *See id.* The district court properly held that Shea's second complaint was "related" to the first within the terms of the FCA's first-to-file bar.

## B.  Same Relator

Shea's second argument goes to the identity of the relator. Shea argues that the first-to-file bar applies only to litigants other than the relator who filed the original action. His argument runs as follows: The first-to-file bar prohibits subsequent relators from "intervene[ing] or bring[ing] . . . action[s]" related to a previously-filed action. 31 U.S.C. § 3730(b)(5). It would be nonsense, he argues, for a litigant to intervene in an action he himself brought. And because it would be nonsense for a relator to intervene in his own suit, "no person" in the statute cannot logically refer to the same relator—in fact, it must be understood to mean "no person other than the original relator." We disagree.

The text of the statute clearly directs that "no person" is allowed to bring a related suit. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249,

8

253–54 (1992). And it is not nonsense to disallow all persons—the original relator included—from bringing a related action. The statute is written in the disjunctive. A second relator need not be capable of both forms of prohibited behavior to be eligible for the prohibition. On Shea's reasoning, a statute that provided that "no vehicles may fly over or drive through a field" could only apply to vehicles that could both fly and drive. No rule of grammar, logic, or the law compels such a reading.

Nor are Shea's policy arguments persuasive. Shea rightly points out that one purpose of the first-to-file bar is to encourage "whistleblowers to approach the government and file suit as early as possible." *See United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 12 (D.D.C. 2003). As he notes, a litigant cannot race himself to the courthouse or divide a bounty with himself. But Shea again ignores the other purpose: "rejecting suits which the government is capable of pursuing itself." *Batiste*, 659 F.3d at 1208. The plain-text reading of the statute advances both goals. We therefore reject Shea's argument that the first-to-file bar does not apply to an original relator.

## C. Dismissal with Prejudice

Finally, Shea argues that the district court erred in dismissing his claim with prejudice. Shea reads the first-to-file bar as a temporal limit on related suits. So long as the first action is no longer pending, Shea reasons, the second action is not barred. Verizon, supported by the Chamber of Commerce of the United States of America as *amicus curiae*, urges us to read "pending action" in the statute as shorthand for "first-filed action." Thus, a related action is barred regardless of the posture of the first-filed action. We agree with Verizon.

9

Shea makes two arguments for his reading. First, he argues that had Congress intended the bar to continue into perpetuity it could have done so by omitting the term "pending." Verizon's interpretation would actually make more sense, he contends, had the statute read, "[w]hen a person brings an action under [the FCA], no person . . . may . . . bring a related action based on the facts underlying the . . . action." 31 U.S.C. § 3730(b)(5). Second, Shea argues that we have suggested support for his reading in the past. In *Batiste*, for instance, we characterized "[t]he command [as] simple: as long as a first-filed complaint remains pending, no related complaint may be filed." 659 F.3d at 1210.

The language Shea quotes from *Batiste* is dicta. There, the second relator (Batiste) also argued that because the first relator's (Zahara's) complaint was dismissed before his, "his complaint should not have been dismissed with prejudice." *Batiste*, 659 F.3d at 1211. But the first action "was dismissed eighteen months prior to the *Batiste* dismissal." *Id.* "During that time, Batiste never asked for leave to amend his complaint in the district court." *Id.* Thus, we held, Batiste "waived his opportunity to file a new suit on the same grounds . . . ." *Id.* Today we must resolve the question not reached in *Batiste*. We hold that the first-to-file bar applies even if the initial action is no longer pending, because we read the term "pending" in the statutory phrase "pending action" to distinguish the earlier-filed action from the later-filed action. Several points support this reading.

First, as Verizon points out, Shea's reading actually supplements the plain text. Shea reads the bar as if it provided that "when a person brings an action under this subsection, no person other than the Government may intervene or bring a related action *while the first action remains pending*." But this is not what the statute says. Instead it makes clear that the bar

10

commences "when a person brings an action under this
subsection," and thence forth bars any action "based on the facts
underlying the pending action."    The simplest reading of
"pending" is the referential one; it serves to identify which
action bars the other.

Second, Congress could have expressed its intent to make
the first-to-file bar temporal, as it has done in other contexts.
For instance, Congress has barred "any claim [in the Court of
Federal Claims] for . . . which the plaintiff . . . *has pending* in
any other court any suit or process against the United States
. . . ."  28 U.S.C. § 1500 (emphasis added); *see also* 42 U.S.C.
§ 300aa-11(a)(5)(B) (precluding a person from bringing a
vaccine-related claim in the Court of Federal Claims if he or she
"*has pending* a civil action for damages for a vaccine-related
injury or death" (emphasis added)).  Congress excluded similar
language in the first-to-file bar.

Finally, our reading better suits the policy considerations
undergirding the statute. *See Batiste*, 659 F.3d at 1208.  The
resolution of a first-filed action does not somehow put the
government off notice of its contents.  On the other hand,
reading the bar temporally would allow related *qui tam* suits
indefinitely—no matter to what extent the government could
have already pursued those claims based on earlier actions.
Such duplicative suits would contribute nothing to the
government's knowledge of fraud.  And Shea has forwarded no
reason why the rule should be read to bar a related claim one
day but not the next.  Accordingly, we reject Shea's argument
that the first-to-file bar represents a temporal limit on related
actions.  The district court did not err in dismissing *Verizon II*
with prejudice.

Appellant has pointed out that three of our sibling circuits
have reached the opposite conclusion on the construction of the

11

word "pending." Of course the decisions of other circuits are not binding upon us, but we have nonetheless reviewed those decisions respectfully and conclude that none of them convinces us of a construction other than the one we reach today. The Seventh Circuit, in *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361 (7th Cir. 2010), only states the conclusion that "[a]s we explained above . . . § 3730(b)(5) applies only while the initial complaint is 'pending.'" *Id.* at 365. The explanation "above" is likewise a conclusory statement that "no one other than the Government may 'bring a related action' while the first is 'pending.'" *Id.* at 362. We do not mean to disparage the opinion of the Seventh Circuit, but note that the issue of focus in the *Chovanec* litigation was the relatedness of the actions rather than the meaning of pendency. The references to the necessity of pendency are more dicta than holding.

Similarly, the Tenth Circuit, in *In re Natural Gas Royalties Qui Tam Litigation*, 566 F.3d 956 (10th Cir. 2009), does refer to "[t]he fact that § 3730(b)(5) applies only when another *qui tam* action is 'pending' . . . ." *Id.* at 963. However, this statement is pure dicta and is unaccompanied by any reasoning as to the construction of the term "pending."

Only the Fourth Circuit actually seems to have given consideration to the meaning of "pending" as a controlling issue in a case before it. While that circuit has considered the question twice, the second opinion, *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013), relies on the first, *United States ex rel Carter v. Halliburton Co.*, 710 F.3d 171, 182-83 (4th Cir. 2013). *Carter*, in turn, relies on the Tenth Circuit decision in *Natural Gas Royalties* without directly comparing the two conflicting constructions of "pending," as we do today. For the reasons set forth above, we will respectfully disagree with the other circuits.

12

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of the complaint.

*So ordered.*

SRINIVASAN, *Circuit Judge*, *concurring in part* and *dissenting in part*: I agree with the majority that the relator's present action is "related" to his prior action for purposes of the False Claims Act's first-to-file bar, 31 U.S.C. § 3730(b)(5). I also agree that the terms of the first-to-file bar encompass situations in which the same relator files a later, related complaint rather than amending his initial one. I therefore concur in the court's decision that the complaint in this case must be dismissed under the first-to-file bar.

I respectfully disagree with the majority, however, on whether the first-to-file bar persists even after the initial action concludes. The other courts of appeals to consider the question have determined—correctly, in my view—that the bar operates only while the first action remains "pending." *Id.* The terms of the statute require that conclusion. Because here, the first action is no longer "pending," the first-to-file bar should pose no continuing obstacle to the filing of a subsequent action. The proper disposition thus should be to dismiss the complaint without prejudice rather than with prejudice.

## I.

I initially note a jurisdictional issue that the parties do not discuss or raise: whether the first-to-file bar goes to the courts' subject-matter jurisdiction. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2011) (setting forth framework "for determining whether to classify a statutory limitation as jurisdictional"). The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and the majority now affirms that disposition. The court's affirmance, however, should not be understood as a holding that the first-to-file bar is a jurisdictional limitation. This court can affirm a dismissal even if it was mistakenly granted under Rule 12(b)(1) for lack of jurisdiction instead of under Rule 12(b)(6) for failure to state a claim on the merits. *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010); *Sierra Club v. Jackson*, 648 F.3d

2

848, 854 (D.C. Cir. 2011).  Today's affirmance of the district court's dismissal for lack of jurisdiction thus establishes no circuit precedent on whether the first-to-file bar in fact is jurisdictional.  *Cf. United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1205-06 (D.C. Cir. 2011) (affirming Rule 12(b)(1) dismissal under first-to-file bar).

This case does not require a definitive resolution of the jurisdictional or nonjurisdictional character of the first-to-file bar.  It might appear at first blush that we do need to resolve the issue for reasons having to do with the relationship between the False Claims Act's first-to-file and public-disclosure bars.  At the time of the complaint, the public-disclosure bar expressly sounded in jurisdictional terms.  *See* 31 U.S.C. § 3730(e)(4)(A) (2006); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-70 (2007).  While the provision has since been amended to remove its express jurisdictional language, *see United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916-17 (4th Cir. 2013) (holding that 2010 amendments to public-disclosure bar now render the provision nonjurisdictional), the version of the public-disclosure bar in effect at the time of the complaint presumably governs.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010).  It might then seem that the court would need to resolve the jurisdictional status of the first-to-file bar at the threshold:  if the first-to-file bar is a nonjurisdictional limitation, perhaps the court would need to confirm its jurisdiction under the public-disclosure bar before considering the applicability of the first-to-file bar.  *See generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (court must assure itself of its jurisdiction before addressing the merits).  This court, though, has held that the requirement to confirm jurisdiction at the outset controls "only when the existence of *Article III* jurisdiction is in doubt," such that the court may leave an issue of *statutory*—as opposed to Article III—jurisdiction undecided while proceeding to consider a

Add. 14

3

nonjurisdictional ground. *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (emphasis in original). The pertinent version of the public-disclosure bar at most established a statutory jurisdictional limitation, not an Article III limitation. There is thus no requirement to decide whether the first-to-file bar is jurisdictional before examining that provision's applicability. For present purposes, it suffices to note that today's decision leaves the provision's jurisdictional or nonjurisdictional status unresolved.

## II.

Until now, the courts of appeals to address the question have uniformly concluded that the first-to-file bar applies only while the first-filed action remains pending. The Fourth Circuit has held as much, *see United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir. 2013) ("[O]nce a case is no longer pending the first-to-file bar does not stop a relator from filing a related case."), *petition for cert. filed*, 82 U.S.L.W. 3010-11 (U.S. June 24, 2013) (No. 12-1497), and I read the Seventh Circuit to have held the same, *see United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361, 365 (7th Cir. 2010) ("As we explained . . . , § 3730(b)(5) applies only while the initial complaint is 'pending.'"). While the majority characterizes the Seventh Circuit's discussion of the issue as "more dicta than holding," *ante*, at 11, that court's determination that the first-to-file bar applies only to pending actions was necessary to its decision to vacate the district court's dismissal with prejudice and remand for entry of a dismissal without prejudice. *See id.*; *see also Carter*, 710 F.3d at 183 (relying on Seventh Circuit's decision in *Chovanec*). Regardless, the majority's reading of the first-to-file bar creates a circuit conflict, and it also diverges from the carefully considered dictum of another circuit. *See In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 964 (10th Cir. 2009) (substantially relying on the "fact that § 3730(b)(5) applies only when another

4

qui tam action is 'pending,'" and reiterating that Congress "limited it to 'pending' actions," such that "if th[e] prior claim is no longer pending, the first-to-file bar no longer applies"); *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001) (holding that first-to-file bar prohibits action because it was filed while initial action remained pending, and assuming that first-to-file bar would not have applied if initial action was no longer pending).

Respectfully, I believe the understanding of the first-to-file bar espoused by the other courts of appeals is correct. The terms of the provision, together with the statutory context and purposes, point to the same conclusion: the first-to-file bar effects no permanent prohibition against the bringing of a subsequent action, but instead ceases to apply once the initial action is no longer pending.

## A.

The first-to-file bar states: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the *pending* action." 31 U.S.C. § 3730(b)(5) (emphasis added). The provision by its terms bars the bringing of an action that bears the requisite factual relationship to a "pending" action, i.e., an action that "[r]emain[s] undecided." *Black's Law Dictionary* 1248 (9th ed. 2009); *see Black's Law Dictionary* 1021 (5th ed. 1979) (defining "pending" as "[b]egun, but not yet completed"). Once the initial action is no longer "pending," the provision poses no bar to "bring[ing] a related action." That is precisely how the Fourth, Seventh, and Tenth Circuits read the statute. *Carter*, 710 F.3d at 183; *Chovanec*, 606 F.3d at 365; *Natural Gas Royalties*, 566 F.3d at 964.

The majority departs from that straightforward understanding of the statutory text. According to the majority, even though the first-to-file bar speaks in terms of a "pending"

5

action, the provision bars the bringing of a related action regardless of whether the first action remains "pending." The bar then operates in perpetuity. The majority reasons that the words "pending action" serve as "shorthand for 'first-filed action,'" and that the "simplest reading of 'pending' is the referential one; it serves to identify which action bars the other." *Ante*, at 8-10. But there is no great mystery about "which action bars the other." The phrase "no person . . . may . . . bring a related action" already makes clear that the first-filed action bars the subsequent, "related action," not the other way around. What is unclear is the duration of that bar. The word "pending" answers that question: the bar operates while the first-filed action remains "pending." It does not operate thereafter.

Because the statute, without the word "pending," already makes plain "which action bars the other," *ante*, at 10, the word "pending" does little work under the majority's interpretation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that . . . , if it can be prevented, no . . . word shall be superfluous, void, or insignificant." (internal quotation marks omitted)). It therefore is of little help to the majority to reconceive of the statute as if it contained the words "thence forth." *Ante*, at 9-10. Congress did not include those words; but even if it had, the word "pending" would still be superfluous. Indeed, not only does "pending" perform no function under the majority's interpretation, but *removing* "pending" would make the majority's interpretation *more*—not less—acceptable. The provision would then say: "When a person brings an action under this subsection, no person . . . may . . . bring a related action based on the facts underlying the [] action." That language speaks more in the nature of a permanent bar than does the enacted text.

Nor does it significantly advance the majority's interpretation to observe that Congress could have used the

6

phrase, "while the first action remains pending." *Ante*, at 9 (emphasis omitted). The words Congress used—"pending action"—are essentially another way of saying that an "action remains pending." The majority also points to other statutes it believes more clearly bar an action only during the pendency of a prior action. *Ante*, at 10. The sole evident difference in language between the cited provisions and the first-to-file bar is that the former use the locution, "has pending," 28 U.S.C. § 1500; 42 U.S.C. § 300aa-11(a)(5)(B), while the latter says, "pending." The comparison is of limited utility because the referenced statutes substantially differ in structure from the first-to-file bar: "has pending" could not be substituted for "pending" in the first-to-file bar without significantly rewriting the statute, so it is difficult to draw meaningful guidance from the fact that "Congress excluded similar language in the first-to-file bar." *Ante*, at 10. Insofar as the majority means to suggest that Congress could have gone further than a simple substitution and instead restructured the provision, one can often imagine an alternative provision that might have made an already clear intention even more clear. At any rate, Congress could have (and presumably would have) simply substituted a different word—without any need for restructuring—had it in fact intended to codify the majority's interpretation that "pending action" is "shorthand for 'first-filed action.'" *Ante*, at 8; *see, e.g.*, 25 U.S.C. § 1300d-27(b)(2) ("After the filing of a first action . . . , all other actions . . . shall be consolidated with that *first action*." (emphasis added)). Congress did not do so.

Construing the first-to-file bar to operate only while the first-filed action remains "pending," moreover, is in keeping with the provision's bar against intervention. The first-to-file bar states not only that no party may "bring" an action "related" to the "pending action," but also that no party may "intervene" in the existing action. 31 U.S.C. § 3730(b)(5). The prospect of intervention by nature could arise only while the initial action remains pending. By linking the prohibition against intervention

7

with the prohibition against bringing a related action, Congress enacted a provision generally addressed to the effect of a pending action:  while that action is ongoing, no party (other than the government) can intervene in it or bring a related action.  Congress did not, however, speak to what happens after the initial action is no longer "pending."  *Cf.* 31 U.S.C. § 3730(e)(3) (barring actions during pendency of civil action or administrative proceeding brought by government and concerning same allegations or transactions).

**B.**

The purposes of the first-to-file bar, as well as its operation within the broader statutory context, reinforce that it applies only while the initial action remains "pending."  In fact, as explained below, the majority's contrary understanding of the first-to-file bar cannot be squared with the intended operation of the False Claims Act's public-disclosure bar.

A central object of the first-to-file bar is "to encourage whistleblowers to come forward with allegations of fraud." *Batiste*, 659 F.3d at 1210.  The provision "creates a race to the courthouse," *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998) (internal quotation marks omitted), "encouraging whistleblowers to come forward by rewarding the first to do so," *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 824 (9th Cir. 2005).

Barring the filing of a subsequent action furthers that objective while the initial action remains pending, but not thereafter.  If multiple relators "could expect to share a recovery for the same conduct," that would "decreas[e] their incentive to bring a *qui tam* action in the first place." *LaCorte*, 149 F.3d at 234; *see Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) ("[O]riginal qui tam relators would be less likely to act on the government's behalf if they had to

8

share in their recovery with third parties who do no more than tack on additional factual allegations to the same essential claim."). The first-to-file bar addresses that concern. The relator who wins the race to the courthouse need not be concerned about splitting her award with later-filing relators because their actions would be barred if brought while her claim is pending. But the interest in "protecting the spoils of the first to bring a claim," *Natural Gas Royalties*, 566 F.3d at 961, ceases to operate when her claim is no longer pending. Any action filed after that point could not affect—or, more to the point, diminish—her recovery. *See id.* at 964 ("The 'pending' requirement much more effectively vindicates the goal of encouraging relators to file; it protects the potential award of a relator while his claim remains viable, but, when he drops his action another relator . . . may pursue his own."). That is precisely why the first-to-file bar may sensibly be "read to bar a related claim one day"—while the initial action is pending—"but not the next." *Ante*, at 10.

The first-to-file bar, as the majority observes, *ante*, at 10, also implicates an additional concern of the False Claims Act: "prevent[ing] copycat actions that do not provide additional material information to the government." *Batiste*, 659 F.3d at 1210. Contrary to the majority's view, however, reading the first-to-file bar to apply only while the initial action remains pending would not "allow related *qui tam* suits indefinitely." *Ante*, at 10. To begin with, if a related action is dismissed when filed during the pendency of the initial action, "it often cannot be refiled—for, once the initial suit is resolved and a judgment entered (on the merits or by settlement), the doctrine of claim preclusion may block any later litigation." *Chovanec*, 606 F.3d at 362. Although an individual relator initiates the action, the plaintiff in a *qui tam* action is the United States, and claim preclusion principles may preclude a subsequent suit involving

9

the same transaction brought by any relator suing on the United States's behalf.  *See id.*

Additionally, to the extent a follow-on action sidesteps claim preclusion (for instance, if the initial action was dismissed without prejudice), the False Claims Act's public-disclosure bar, 31 U.S.C. § 3730(e)(4), exists to weed out copycat actions.  The provision of the Act with chief responsibility for that function is the public-disclosure bar, not the first-to-file bar.  To be sure, the first-to-file "bar does eliminate opportunistic relators," but "most of these relators would be eliminated by the public disclosure bar anyway."  *Natural Gas Royalties*, 566 F.3d at 963.  The "true value" of the first-to-file bar thus "lies in protecting the recovery of the first relator who files."  *Id.*

The differing scope of the first-to-file and public-disclosure bars illuminates their relative roles in addressing copycat suits.  The operation of the first-to-file bar is confined to situations in which the government gains notice of fraud through the filing of an initial action under the Act:  without a first-filed action, there is no first-to-file bar.  The public-disclosure bar sweeps far more expansively.  It fully applies when the government gains notice through the filing of a prior action; but it also encompasses notice to the government through a broad array of additional means, including federal hearings, reports, and investigations of all types, as well as publication in the news media.  31 U.S.C. § 3730(e)(4)(A)(i)-(iii).  Congress accordingly would have assumed that its objective of constraining copycat actions would find primary voice in the public-disclosure bar.  There is thus no need to give the first-to-file bar an unduly broad reading to fend off "duplicative suits [that] contribute nothing to the government's knowledge of fraud."  *Ante*, at 10.  The public-disclosure bar exists to do exactly that.

10

The majority's expansive interpretation of the first-to-file bar in fact would tend to *undermine* Congress's careful calibration of the public-disclosure bar. While the latter bar generally prohibits a False Claims Act action if "substantially the same allegations or transactions" have been "publicly disclosed," 31 U.S.C. § 3730(e)(4)(A), Congress intentionally stopped short of pursuing that objective to the exclusion of all else. Congress established an exception to the public-disclosure bar for an action brought by an "original source," generally an individual possessing independent knowledge of the subject matter. *Id.*; 31 U.S.C. § 3730(e)(4)(B). "Allowing an original source to bring an action even when the government should be on notice of the fraud serves the purposes of the [False Claims Act] by increasing valid enforcement actions." *Natural Gas Royalties*, 566 F.3d at 963. The government might elect to forgo a valid claim for various reasons, including a lack of resources to pursue the claim or a lack of adequate evidence in its own possession. An action by an original source based on her own independent information would then afford a means by which the government could obtain some recovery. In that way, the "original source exception acknowledges that not every relator whose suit would be barred by the public disclosure bar is a parasite." *Id.*

Under the majority's interpretation of the first-to-file bar, however, an action that Congress specifically sought to allow under the original-source exception would nonetheless be disallowed under the first-to-file bar. Suppose, for instance, that an action filed by Relator A alerts the government to an actual and important instance of fraud but is dismissed for reasons having nothing to do with the merits; and suppose, further, that the government elects not to intervene due to a lack of resources. The original-source exception would permit a related action by Relator B, an original source with independent information about the fraud, notwithstanding the public-disclosure bar. But

Add. 22

11

the majority nevertheless would read the first-to-file bar to prohibit Relator B's action in perpetuity. There is no reason to think that Congress carefully and specifically opened the door to Relator B's action via the original-source exception, only to slam the door shut via the first-to-file bar. By contrast, if the first-to-file bar is understood to apply only while the initial action is "pending," Relator B could thereafter bring an original-source action, as Congress presumably intended she be free to do.

Congress, in recent amendments, scaled back the operation of the public-disclosure bar still further, again in a way that would be undercut by reading the first-to-file bar to apply in perpetuity. The public-disclosure bar now allows the government to veto any dismissal notwithstanding its notice of the fraud. *See* 31 U.S.C. § 3730(e)(4)(A) ("The court shall dismiss an action or claim under this section, *unless opposed by the Government*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . ." (emphasis added)). The first-to-file bar grants no such authority to the government. As a result, while Congress specifically enabled the government to choose to permit a follow-on action concerning "the same allegations or transactions" even though it may be on notice of the fraud, the majority would read the first-to-file bar to prohibit the very same follow-on action regardless of any desire by the government to allow it to proceed. But if the first-to-file bar instead ceases to apply once the first-filed action is no longer "pending," the government thereafter could choose to allow a subsequent action, just as Congress intended. Interpreting the first-to-file bar to apply only while the initial action remains "pending," in short, best harmonizes that provision with the remainder of the statute.

12

\*   \*   \*   \*   \*

　　In my view, the first-to-file bar operates while the first action is "pending," but not thereafter.  Here, the relator, rather than amending his complaint, brought a related, second action.  Because his initial action was then pending, the complaint in this case must be dismissed.  But because his initial action no longer remains pending, the dismissal should be without prejudice to his later filing a related complaint.  *Accord Chovanec*, 606 F.3d at 365.  Any later action might be subject to dismissal for reasons yet to be examined, including the public-disclosure bar.  But the first-to-file bar should impose no ongoing prohibition against the filing of a subsequent complaint.

## <u>CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES</u>

Pursuant to Circuit Rule 27(a)(4), counsel for appellant Stephen M. Shea submit this certificate as to parties, rulings and related cases.

A.     <u>Parties and Amici</u>:  The parties to this appeal are appellant Stephen M. Shea, the Relator in the district court proceedings; the United States, which did not intervene; and appellees Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services Inc., Verizon Federal Inc., and MCI Communications Services, Inc. d/b/a Verizon Business Services.  The Chamber of Commerce of the United States of America participated as amicus curiae in support of appellees.

B.     <u>Rulings Under Review</u>:  This petition seeks rehearing *en banc* of the April 11, 2014 decision of a divided panel of this Court (Sentelle, J., joined by Edwards, J.; Srinivasan, J., concurring in part and dissenting in part), affirming the district court's dismissal with prejudice of appellant Shea's *qui tam* complaint under the first-to-file bar provision of the Federal False Claims Act, 31 U.S.C. § 3730(b)(5). *See United States ex rel. Shea v. Cellco Partnership*, *Doing Business as Verizon Wireless*, *et al.*, No. 12-7133.  A copy of the panel's decision is attached as an addendum to this petition.

C.     <u>Related Cases</u>:   There are no related cases on appeal.